ALFRED WORDEN *et al.*, Plaintiffs in Error, *v.* ARCHIBALD WILLIAMS, Defendant in Error.

### ERROR TO WARREN.

Where A. received a title to land deduced from a deed executed in 1818, but not recorded till 1855, such title will prevail against a subsequent deed previously recorded, executed with notice to the grantee, through his agent, of the existence of the unrecorded prior deed.

Actual notice is not in all cases equivalent to recording.

Constructive notice, arising from possession under an equitable title from a fraudulent grantee—by one who occupies after the execution and before the recording of a deed—will not defeat a *bona fide* deed.

A description of land, if defective, is good if it can be cured by reference to the government records, or by the patent.

THE defendant in error filed his bill in Warren Circuit Court, against Jane Searles, the widow, and Henry M. Searles, and others, the heirs of Robert Searles, deceased, Samuel Tompkins, the unknown heirs of Thomas Tompkins, the unknown heirs of William Odell, Philip Van Courtland, John H. Johnson, Stephen Bronson, Ezekiel Minor, P. D. Wilson, Darlington J. Stewart, David Thomas, James Lombard, George F. Harding, Hezekiah M. Wead, C. A. Worden, Albert Worden, John J. Worden, and Curtis Worden.

The bill states, that on the 9th of March, 1818, the United States granted to Robert Searles, his heirs and assigns, as a military bounty, the S. W. ¼ 33, 8 N., 2 W., fourth principal meridian; that on the 29th of June, 1818, Robert Searles and Jane, his wife, by deed, conveyed the said tract of land· in fee to Thomas Tompkins and Samuel Tompkins, which deed was recorded in Warren county, 23rd June, 1855.

This deed describes the premises conveyed as " all that quarter section thirty-three, of township eight north, in range two west, in the tract by the acts of Congress for military bounties in the territory of Illinois, containing one hundred and sixty acres, it being land given to the said Robert Searles, for his services in the late war, by the United States."

The bill further states, that on the 1st April, 1820, the said Thomas and Samuel Tompkins, by deed, conveyed the said tract to William Odell in fee, by the description, " all the south-west quarter of section thirty-three, of township eight north, in range two west, in the Illinois Territory, containing one hundred and sixty acres," omitting, by mistake or accident, that it was of the fourth principal meridian, which deed was recorded October 20th, 1855; that on the 10th July, 1822, Odell and wife conveyed, by deed, with the description last aforesaid, to Gen. Philip Van Courtland in fee, which was recorded October 20, 1855;

that on 7th June, 1823, Van Courtland, by deed, conveyed the land in fee to John H. Johnson, by the said description, which was recorded October 20, 1855; that on the 2nd September, 1826, Johnson, by deed, conveyed to Stephen Bronson in fee, by the same description, which was recorded October 20th, 1855; that on 16th December, 1826, Bronson, by deed, conveyed to Ezekiel Minor in fee, by the same description; that on the 23rd April, 1838, Minor and wife, by deed, conveyed the land to P. D. Wilson.

The bill further alleges, that on the 18th September, 1838, the said Wilson intended to convey the land to Darlington J. Stewart, but by mistake in the deed described it as " west quarter of section thirty-three, of township eight north, in range two west, in Warren county, State of Illinois;" that on 5th June, 1854, Stewart and wife, by deed, conveyed the land in fee to David Thomas; that on 11th September, 1856, Thomas and wife conveyed the land in fee to defendant in error.

The bill further states, that each of the grantors in said deeds intended to convey the land first described in the bill, and at the time delivered the patent and proper deeds as muniments of title; that the deeds were executed in New York and Ohio, and the imperfect descriptions in the deeds resulted from a want of local information, as to the correct method of describing land in this State.

The bill states the death of Robert Searles, intestate, in 1837, leaving widow and children; that after the conveyance by Searles to Thomas and Samuel Tompkins, he never, in his lifetime, or his heirs since his death, claimed any interest in the land; that James Lombard obtained, on the 1st and 14th days of September, 1854, with full knowledge that Searles in his lifetime conveyed the land to the Tompkins, in his lifetime, two quitclaim deeds from the widow and heirs of Searles, for a nominal consideration, conveying the land to him, Lombard, and caused them to be recorded on the 12th day of October, 1854. Afterwards, and after the said deed from Searles to the Tompkins had been recorded, " to wit, on the 20th October, 1855, James Lombard conveyed the land to George F. Harding and H. M. Wead, who, at and before the time of said conveyance, or at and before the payment of the purchase money therefor, had actual notice of the said conveyance by the said Robert Searles, or if they had not such actual notice of said conveyance, yet they had by the recording thereof constructive notice."

The bill further states, that Harding and Wead conveyed the land to C. and A. Worden, 2nd December, 1855; that they conveyed the west half of the south half, to Albert Worden, 2nd February, 1856, who, on the same day, conveyed portions to

John J. Worden and Curtis Worden; that each of the said Wordens, at the time of their respective purchases, had actual notice of the conveyance from Searles to the Tompkins, or if. not, they had constructive notice by the recording of the deed.

The bill states the death of the Tompkins and Odell, heirs unknown, and charges that the imperfect descriptions and the deeds to Lombard are clouds on the title.

In order that the omissions, imperfections, and mistakes in the deeds, and that the deeds to Lombard may be set aside, the defendant in error prays that all the persons aforesaid may be made parties and required to answer without oath, and that the deeds be reformed, and the deeds to Lombard be annulled, and also for general relief.

The defendant Wead answered May 26, 1858, and admits the land was granted to Robert Searles 9th March, 1818, but denies that Robert Searles deeded to the Tompkins, that it was proven or recorded as stated in the bill; denies all statements as to the conveyances from the Tompkins down to the defendant in error; avers that he has no knowledge as to the death of Searles, his heirs, or how Lombard obtained the title, or whether or not he purchased with notice.

The answer admits that James Lombard did purchase the land and obtain deeds from the widow and children of Searles, which were recorded 12th September, 1854.

The answer avers, that on the 18th day of October, 1854, the respondent and the defendant Harding, having examined the records and finding no conveyance from Robert Searles, and having no knowledge, or information of any, but believing the real title to be in James Lombard and Levi F. Stevens, and they the actual *bona fide* owners, did on that day purchase the land of them for $600, and received from them an agreement of that date to convey the same on the payment of the purchase money; that the respondent and Harding executed promissory notes for the purchase money, and paid $300 within fifteen days after the purchase, and the balance on the 18th October, 1855.

The answer denies all notice, actual or constructive, of the deed from Searles to the Tompkins, until long after the conveyance by Lombard to the respondent and Harding, and also by them to the Wordens.

The answer states, the deed from Lombard was executed October 18, 1855, and recorded October 20, 1855. That on the 31st October, 1854, the respondent and Harding sold the land to Curtis and Albert Worden for $640, payable, $305, January 1st, 1855, and the balance 1st January, 1856, and on the day of sale executed to them an agreement to convey on the payment of the purchase money, with covenants of warranty against all

patent titles; that the Wordens paid the purchase money about the times agreed; denies all notice to the Wordens of the deed to the Tompkins.

The answer states, that immediately after the purchase by the Wordens, they took actual possession, and occupied the same by making visible, open and exclusive improvements, and were in such possession at the time the deed from Searles to the Tompkins was recorded.

The contract between Wead and Harding and the Wordens, with the indorsements, is made a part of the answer, from which it appears that the first installment was paid April 6, 1855, and the second, Dec. 31, 1855, and the deed delivered on that day.

The defendants, George F. Harding, Curtis, Albert and John J. Worden, answer, and adopt the answer of Wead.

To which answers there was a replication.

The master reported as proof that he had examined the original patent, and deeds and certificates indorsed thereon, and the deeds were duly executed and recorded as stated in the bill; that the deed from P. D. Wilson to D. J. Stewart, conveying the west quarter of section thirty-three, of township eight north, in range two west, in Warren county, etc., was intended to convey the south-west quarter of said section, and that the imperfect description in said deed was the mistake of the draftsman thereof; that before and at the time of the execution of the deeds by the heirs of Searles to Lombard, the agent of Lombard, who procured the deeds, had full knowledge of the execution of the deeds from Robert Searles to Samuel Tompkins and Thomas Tompkins, and that said deed was recorded in the proper office, June 23, 1855; and that the deed from James Lombard to defendants Wead and Harding, was executed October 18, 1855; also, that the land was worth from $2,500 to $3,000, without improvements.

In April, 1859, the Circuit Court, THOMPSON, Judge, presiding, rendered a decree upon a hearing, upon the bill and exhibits, the answers, replication, master's report, and the depositions and proofs, that the deeds to James Lombard be set aside; that for the purpose of correcting the error in the description in the deed from P. D. Wilson to Darlington J. Stewart, the said Wilson convey the said tract to the complainant in fee simple, by quit-claim deed, within one month; and in default, the master convey all the right, title and interest of the said Wilson; that a complete record be made, at cost of complainant.

The cause still remaining on the docket, November 16, 1859, an agreement was entered into between the parties, as follows, to wit:

Whereas, there appears to ·be no decree *pro confesso* and reference now among the papers on file, and no report of the evidence on the part of the defendants; now for the purpose of supplying these omissions:

It is agreed that the complainant may take and file a decree *pro confesso*, against all the defendants sued, and who have not answered, and of reference to the master in chancery, to take and report the evidence, with his conclusions thereon, now as of and for the September term, A. D. 1858, and that no exceptions shall be taken, or error assigned, because of such taking and filing the decree *nunc pro tunc.*

And it is further agreed, that the defendants, answering upon the trial of the cause at the final hearing, proved the following facts, to wit:

1st. That the deeds from the widow and heirs of Robert Searles to James Lombard, were recorded in September, 1854, in Warren county. .

2nd. That the defendants, Wead and Harding, purchased the land described in the bill, of James Lombard, on the 18th day of October, 1854, for six hundred dollars, and received from . the said Lombard a written agreement to convey the land by quit-claim deed, without covenants, upon the payment of the purchase money, and Wead and Harding executed and delivered their promissory notes for $300 each, one payable within fifteen days after 18th October, 1854, and $300 on 18th October, 1855, to the said James Lombard.

3rd. That the said Wead and Harding had no actual knowledge of a conveyance by Robert Searles and wife to Thomas and Samuel Tompkins, until after 1st January, 1856, and no other notice before that time, except such notice as the law makes the filing of a deed for record.

4th. That James Lombard conveyed the land by quit-claim deed to Wead and Harding on 18th October, 1855, by deed of that date, in pursuance of the prior contract between them, and that said deed was recorded December 31, 1855.

5th. That on the 31st October, 1854, Wead and Harding sold the land to Curtis and Albert Worden, for six hundred and forty dollars, and executed a written ·contract of the parties, and which is attached to the answer of defendant Wead; that the payment of $305 thereon was made before 23rd June, 1855, and the remainder after that time, and before the 26th December, 1855.

6th. That Wead and Harding conveyed the land, in pursuance of their contract, to Curtis and Albert Worden, 26th December, A. D. 1855, which was recorded 31st December, 1855.

7th. That the said Wordens had actual possession of said land in the fall of 1854, when they purchased of Wead and Harding, under tax title, and retained it until after the commencement of this suit, when they sold and conveyed the land, and delivered possession thereof, to Samuel Larkins.

Which agreement was to have no other effect than was hereinbefore specified, and is not to prevent either party from availing himself or themselves, of any and all other valid objections, or assigning error upon and for any other matters, and prosecuting a writ of error from the final decree heretofore rendered, or any decree hereafter rendered.

The defendants below, Albert Worden, Curtis Worden, John J. Worden, Hezekiah M. Wead, and George F. Harding, now bring the record to this court, as plaintiffs in error.

The plaintiffs in error assign the following errors, to wit:

1st. The Circuit Court erred in rendering a decree setting aside the deed from the heirs of Searles to Lombard.

2nd. The Circuit Court erred in this, that it failed to render a decree in favor of the plaintiffs in error, or some of them, for the money paid before the filing of the deed from Robert Searles to Samuel and Thomas Tompkins, for record.

3rd. The Circuit Court ought to have dismissed the bill.

4th. The proceedings are otherwise informal and erroneous.

The plaintiffs in error, Albert Worden and Curtis Worden, assign the following separate errors:

1st. That the Circuit Court ought to have taken an account of the improvements made by them before notice, and rendered a decree therefor.

2nd. The Circuit Court ought to have rendered a decree for the payment of the purchase money paid by them for the land, either against the defendant in error, or Wead and Harding.

GOUDY & WAITE, for Plaintiffs in Error.

A. WILLIAMS, *pro se.*

CATON, C. J. Although the ground of equitable jurisdiction in this suit is the alleged defective description of the property designed to be conveyed by the deed from Wilson to Stewart, yet the consideration of the case at once leads us back to the deed from Searles and wife to the Tompkins', for upon the influence and effect of that deed depend entirely the rights of the complainant. If, at the time that deed was recorded, a complete title to the premises vested in the grantees, (assuming they had not previously conveyed the premises,) then their grantees are invested with the same right and title. Upon that

deed the complainant may safely repose, if it would now be effectual in the hands of those grantees, and he shows that he has by purchase acquired or is entitled to the interest or title thereby secured to them. If he is their representative, then he has but to show that that deed was sufficient to vest in them the title to the premises.

That deed was duly executed in 1818, but it was not recorded till the 23rd of June, 1855. Eight months before this, Searles had made another deed of the same premises to Lombard, which was immediately recorded. When this deed was made, Searles advised Lombard's agent, who made the purchase, that he had previously conveyed the premises to the said Tompkins, so that Lombard was chargeable with notice of that deed as much as if it had been previously recorded. But previous to the recording of the first deed, Lombard had sold and agreed to convey the premises to Wead and Harding, and they to the Wordens, who were at the time of the recording of the Tompkins deed in the actual possession of the premises, claiming to hold them under their purchase from Wead and Harding, and also under a tax title. The agreements to convey from Lombard to Wead and Harding, and from them to the Wordens, were not recorded, but the deeds subsequently made in pursuance of those agreements, were recorded in December, 1855, six months after the Tompkins deed was recorded. This raises the question whether the constructive notice arising from the possession held by the Wordens at the time the Tompkins deed was recorded, can affect the title of those grantees, or those claiming under them. As to the true answer to this question, no one can for a moment entertain a doubt. If at the time the deed was executed and delivered, the purchase was *bona fide,* and without notice of the conflicting patent title, no notice, actual or constructive, between that time and the recording of the deed, could affect the title. By force of the statute, the recording of the conflicting title would give that a preference. It is not always true that even actual notice is equivalent to recording. To state the case plainly and simply, is to bring it clearly within the appreciation of every legal mind. Two persons have deeds to the same premises, of different dates, from the same grantor. They simultaneously learn of the existence of each other's deeds, and the holder of the first deed beats the other in a race to the recorder's office. No one would suppose for a moment that his knowledge of. the existence of the other deed, would destroy the effect of his record and postpone his deed to the one subsequently recorded. We say the simple statement of the proposition demonstrates the proper conclusion, that actual notice is not in all cases equivalent to recording. The constructive

notice arising from the possession of the Wordens, after the execution and before the recording of the Tompkins deed, could not postpone it to their equitable unrecorded title. This would seem to settle the whole controversy, were the Tompkins now in court asserting title under their deed. At the time it took full and final effect under our recording law, there was nothing with which it had to contend, but the fraudulent deed to Lombard, which could not stand before it a moment, either in a court of law or equity, by reason of the actual notice with which the grantee was chargeable at the time of the purchase.

But it is said that this Tompkins deed is itself so defective in the description of the premises conveyed, that its record could not amount to notice to any one. This is not a question of notice, but simply a question of priority under our recording laws. If the defendant's purchase had been made subsequent to the recording of the deed, and it were a simple question of notice by the record, a description so defective as not to be sufficient to put a reasonably cautious man on inquiry, the objection would merit the most serious consideration. But such is not this case. The description in this deed is not only sufficient to put a party on inquiry, but it is sufficient in law to designate the premises sufficiently to carry the legal title and to constitute a right of recovery in ejectment. This is the description: "All that quarter section thirty-three, of township eight north, in range two west, in the tract by the act of Congress for military bounties in the territories of Illinois, containing one hundred and sixty acres, it being land given to the said Robert Searles for his services in the late war, by the United States." Here the section, township and range are given in which the quarter section conveyed is situated, in such language as to leave no one in doubt as to the ideas intended to be conveyed, and then, for the purpose of designating which quarter is intended to be conveyed, a description by reference is given thus: "*It being the same land given to the said Robert Searles for his services in the late war, by the United States.*" It is not only possible to answer this descriptive reference, but we know certainly that it can be done by the government records, or by the patent issued to Searles, for we know that there are military lands, and that Searles could have derived title in no other way, and both parties admit that he had title. Even this description by reference was alone sufficient to convey the legal title when the reference is answered by extraneous proof. The deed then was sufficient to entitle the grantees and their representatives to the benefit of the record secured to them by the recording laws.

And this in fact disposes of the whole merits of this case.

It lays the defendant's title out of the case by postponing it to that conveyed to the Tompkins, and there is no dispute that the complainant is the true representative of that title, and but for the defective description of the premises in the deed from Wilson to Stewart, he would now be the undoubted holder of that paramount legal title. The proof shows, and it is admitted, that that defect originated in the mistake of the scrivener who drew the deed, and that the premises in question were in fact designed by both parties to that deed to be described in and conveyed by it. No principle is more familiar, that it is within the jurisdiction and is the duty of courts of equity to correct such mistakes.

The decree must be affirmed.

*Decree affirmed.*