JOSEPH A. RODEMEIER *et al.*

*v.*

KATHERINE BROWN *et al.*

*Opinion filed November 8, 1897.*

1. DEEDS—*manual transfer of deed not essential to valid delivery.* It is not essential to a valid delivery of a deed that there be a manual transfer thereof from the grantor to the grantee.

2. SAME—*presumption of delivery is strong in cases of voluntary settlements.* The presumption in favor of the delivery of a deed is stronger in the case of a voluntary settlement than in bargain and sale.

3. SAME—*evidence held sufficient to establish delivery.* Evidence that a grantor about to die pointed toward a deed and asked a person standing by to take it and deliver it to the grantee, which request was then assented to but not carried out until after the grantor's death, shows a good delivery, where the grantee had been in possession of the land conveyed for years with knowledge of the deed, had paid all taxes, made valuable improvements and conformed to all the terms of the deed.

4. ESTOPPEL—*when the grantor's heirs are equitably estopped to deny delivery.* The facts that a father executed a deed to his son and permitted him to take possession of the land, pay all taxes, make improvements and pay a stipulated sum each year as part of the

consideration, from the time the deed was made until the grantor's death, will constitute an equitable estoppel against a contention by the heirs that there was no delivery of the deed.

5. SAME—*when giving receipt "in full" for a share of an estate works estoppel.* A daughter executing a valid receipt for money advanced by her father as "in full" for her portion of his estate is estopped from claiming any further interest therein.

APPEAL from the Circuit Court of Stephenson county; the Hon. JAMES SHAW, Judge, presiding.

This is a bill for partition, filed by one of the daughters of Frank Brown, Sr., deceased, and her husband; and five grandchildren of said deceased; against the widow of said deceased; and his three sons and their wives; and two of his daughters and their husbands. The property, sought to be partitioned as described in the bill originally filed, was 213 acres in Stephenson county and a certain lot in the village of Lena in that county. The bill was, however, afterwards amended, so as to leave out said village lot. The complainants claim to own undivided interests in the premises sought to be divided, as heirs, with the defendants, of said Frank Brown, Sr., deceased. The bill alleges that the defendant, Frank Brown, Jr., claims to be the owner of the premises under a deed from his father, Frank Brown, Sr., and charges that said deed was never delivered by Frank Brown, Sr., in his lifetime to Frank Brown, Jr., or to any person for him. The bill is answered by the widow and the three sons and two of the daughters of the deceased, and their wives and husbands. The answer denies that the deceased, Frank Brown, Sr., was the owner of the premises at the time of his death, and avers that said deceased in his lifetime, and on June 26, 1885, together with his wife, conveyed said premises to the defendant, Frank Brown, Jr. The answer also states that, since said conveyance, said Frank Brown, Jr., has been, and is, the exclusive owner of said premises, and has been in the sole possession thereof, paying the taxes thereon and making improvements thereon. In their joint

and several answer defendants disclaimed any interest of any kind in the premises. Therein they admitted, what is alleged in the bill, that Frank Brown, Sr., in his lifetime made large advancements to his children in money or property, as voluntary settlements upon them out of his estate; and they charge that the complainant, Katherine Weishar, received from her father her full share of his estate. The answer also avers, that it was the intention of deceased to make a voluntary settlement upon the defendant, Frank Brown, Jr., his son, when he made said deed to him; and they charge that all the consideration in said deed, not therein provided to be paid by Frank Brown, Jr., was intended as a voluntary settlement upon him; they insist that said deed was a good conveyance of said land to him, whether actually delivered to him in the lifetime of his father or not; but they charge, that said deed was delivered to said Frank Brown, Jr., during the lifetime of his father.

The testimony shows the following facts: Frank Brown, Sr., died intestate March 1, 1895, seized in fee of the premises described in the bill. He left him surviving his widow, Katherine Brown, and, as his only heirs-at-law, the following children and grandchildren, to-wit: three sons, Andrew, Joseph and Frank Brown, and three daughters, Adelina Medeke wife of John Medeke, Julia Medeke wife of Andrew Medeke, and Katherine Weishar wife of Andrew Weishar; and five grandchildren, Joseph A. Rodemeier, the son of a deceased daughter named Mary Rodemeier, and Andrew Biehl, Michael Biehl, Mary Hughes and Katherine Fehr, the children of a deceased daughter named Delia Biehl.

On June 26, 1885, the deceased, Frank Brown, Sr., and his wife, Katherine Brown, executed a deed conveying 203 acres of the premises in question to his son Frank Brown, Jr. This deed was executed and acknowledged on the day of its date, and remained in the possession of the grantors until about two days before the death of the

grantor, Frank Brown, Sr., which took place on March 1, 1895. This deed recites upon its face, that it is made upon the express condition that said Frank Brown, Jr., the party of the second part thereto, will pay or cause to be paid to his father and mother, the parties of the first part thereto, the sum of $300.00 per year during the natural life of the parties of the first part, or either of them; the payments commencing with the date of the deed and due in one year from date.

The court below, after proofs taken and hearing had, entered a decree finding that the defendant, Frank Brown, Jr., was the legal and equitable owner of 203 acres of the land described in the bill, and that none of the other defendants, and none of the complainants, had any interest in said 203 acres; and that the complainants were not entitled to have a partition thereof as prayed in their bill. As to ten acres, however, of the 203 acres described in the bill, the court held that said children and grandchildren of the deceased were owners of certain undivided interests therein, as heirs of said Frank Brown, Sr., deceased, and were entitled to have partition of said ten acres; and decreed, thereupon, that the dower of the widow in the ten acres be assigned to her, and that the remainder thereof be partitioned, and appointed commissioners to make partition. The complainants below, the present appellants, appealed from that part of the decree holding the ownership of the 203 acres to be in Frank Brown, Jr.

J. H. STEARNS, for appellants:

The grantor must part with all control over the deed. It cannot take effect while it remains in his possession and is subject to his control. *Wiggins* v. *Lusk*, 12 Ill. 133.

If the grantor dies without parting with his control of the deed it has not been delivered during his life, and after his death no one can have the power to deliver it. To constitute a delivery good for any purpose the grantee

must divest himself of all power and dominion over the deed.  *Provart* v. *Harris*, 150 Ill. 40.

The depositary must have had such a dominion over the deed, during the lifetime of the grantor, as the latter could not interfere with, in order to have any control over it after his decease.  *Cook* v. *Brown*, 34 N. H. 460.

There can be no delivery without acceptance.  Proof of acceptance after delivery is insufficient.  *Hulick* v. *Scoville*, 4 Gilm. 159.

The act of a grantor in handing a deed to his attorney, with instructions to deliver it as soon as a certain marriage was solemnized, is not a parting with the instrument with the intention of relinquishing all dominion over it, but merely putting it into the hands of an agent, whose possession, so long as it continues, is the possession of the principal.  *Kingsbury* v. *Burnside*, 58 Ill. 310; *Barrows* v. *Barrows*, 138 id. 649.

A mere naked power, not coupled with an interest nor acted on in any way during the life of the donor, is revoked by his death.  *Pratt* v. *Trustees*, 95 Ill. 475; *Strother* v. *Law*, 54 id. 413; *Estate of Rapp* v. *Insurance Co.* 113 id. 390; *Gilbert* v. *Holmes*, 64 id. 584.

When there has been no delivery in the lifetime of the grantor, a delivery after his death, though at his request, is void.  *Baldwin* v. *Maltsby*, 5 Ired. 505.

HENRY C. HYDE, for appellees:

A voluntary settlement, fairly made, is always binding, in equity, upon the grantor, unless there be clear and decided proof that he never parted or intended to part with the possession of the deed; and even if he retain it, there must be other circumstances beside the mere fact of his retaining it, to show that it was not intended to be absolute.  *Bunn* v. *Winthrop*, 1 Johns. Ch. 327.

If a party execute a voluntary settlement, and the deed recites that it is sealed and delivered, it will be binding upon the settlor, although he never parts with

it, but keeps it in his possession until his death. *Cline* v. *Jones*, 111 Ill. 563.

In no case, whether the grantees be infants or adults, are a formal delivery and acceptance essential, though there must be acts evincing such intention. The intention of the party is the controlling element in contracts of this character. *Masterson* v. *Cheek*, 23 Ill. 72.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The question involved in this controversy is, whether the deed, executed by Frank Brown, Sr., in his lifetime on June 26, 1885, to his son Frank Brown, Jr., was, in the lifetime of the grantor, delivered to the grantee, so as to become a valid conveyance of the premises therein described.

There is no universal test, applicable to all cases, for the purpose of determining the question of the delivery of a deed. Undoubtedly there is always a delivery of a deed, where the grantor makes a manual transfer of it to the grantee with the intention of passing the title from himself to the grantee, and of relinquishing all power and control over the instrument itself. This physical transfer of the deed from the grantor to the grantee is not, however, absolutely essential in all cases. "Other acts, accompanied with a clear intent to pass the title from one to the other, are equally efficacious in establishing a delivery." (*Weber* v. *Christen*, 121 Ill. 91).

In order to determine whether there was a delivery of the deed in this case, it will be necessary briefly to state the material facts, as shown by the testimony in the record. The deceased, Frank Brown, Sr., formed and carried into execution a plan for the disposition of his estate many years before his death. The three living daughters of the deceased, Katherine Weishar, Adelina Medeke, and Julia Medeke, and two of his sons, Joseph and Andrew, lived with the deceased many years, and aided him in

the household work in his home, and in work upon his farm.   To these sons and daughters he gave, in his lifetime, the respective shares, which he intended them to receive from his estate.   He conveyed to Joseph Brown about 120 acres.   He conveyed to Andrew Brown about 200 acres.   He paid to his daughter, Julia Medeke, $1000.00, for which she executed to him a receipt in full of her "portion of the estate of my father, Frank Brown."   He paid to his daughter, Adelina Medeke, $1000.00 in full of her portion of the estate of her father.   On January 25, 1883, the appellant, Katherine Weisher, executed to her father the following receipt: "Received of Frank Brown the sum of $1000.00 in full of my portion of the estate of said Frank Brown."   His deceased daughters, Mary and Delia, left home at the respective ages of sixteen and seventeen years, and were soon thereafter married.   Their marriages occurred some twenty-nine or thirty years before the death of their father.

The circumstances attending the execution of the deed to Frank Brown, Jr., on June 26, 1885, are as follows: Theretofore Frank Brown, Sr., went to a justice of the peace and notary public in Lena, and said that he wanted to give his son, Frank, the farm on which he lived, but wanted his said son to pay $300.00 a year upon it as long as he himself and his wife were living.   The notary advised that a deed be made, and that the condition in regard to the payment of the $300.00 should be put in the deed.   On the day mentioned Frank Brown, Sr., and his wife, went back to the notary, who then made the deed as requested, and the same was signed in his presence and acknowledged.   The notary then handed the deed back to the deceased, Frank Brown, Sr., who took it away with him.   When this deed was made, Frank Brown, Jr., was twenty-one years old, or a little over that age, and about that time he married.   As soon as this deed was executed, Frank Brown, Sr., left the farm, consisting of the 203 acres, which had prior thereto been his homestead

farm, and went to the village of Lena to live, where he did live until his death. He left the farm in the possession of his son, Frank Brown, Jr. The appellee, Frank Brown, Jr., remained in possession of said farm from June 26, 1885, up to the time of his father's death on March 1, 1895. During this time, and up to the time of taking the testimony in this case, he paid all the taxes upon the land for eleven years from 1885 to 1895 inclusive. Said taxes amounted altogether to $542.79. During this time, also, he made improvements upon the farm, amounting altogether in value to $2875.00, said improvements consisting of the erection of barns, wind-mills, fences, wood-houses, cattle-shed, ice-house, digging wells, repairing the homestead and setting out orchards of fruit trees. During all this time, also, he paid $300.00 per year to his father in performance of the condition named in the deed.

The inference is clear from the testimony, that the appellee, Frank Brown, Jr., retained possession of the premises, and paid the taxes, and made the improvements, and made the annual payments to his father, as above stated, under the deed, and with knowledge that the deed had been executed, and also under the assurance given him by his father that the land was to be his. Frank Brown, Jr., is not a competent witness in this case and has not been allowed to testify. But his brother, Joseph, swears, that he told his brother, Frank, about the execution of the deed to him by their father some eight years before the father's death. It was well understood in the family, that such a deed had been executed. Soon after it was executed, the deceased took the same to one of his sons, and read it to him, and said that Frank was to have the land. The widow and the other son, Andrew, also testified, that the deceased always spoke of the land as being Frank's land; and Andrew says his father told him the deed was made to Frank. The regular payment of $300.00 per year shows, that the possession of the land was held under the terms of the deed.

March 1, 1895, the day on which Frank Brown, Sr., died, was Friday. On the night of the Wednesday preceding this Friday, Joseph Brown was present in his father's sick-room at his bedside. About midnight his father said to him that he could not get well; he also said to Joseph at that time: "I will give you charge of Frank's deed; in that drawer (pointing to the drawer) is Frank's deed; take it and give it to him." The drawer referred to was the drawer in a bureau in the same room where the deceased died. Joseph replied to this statement of his father as follows: "I said: all right, father; it is in my charge now, and I will take care of it, and give it to Frank; I told him not to worry over things; afterward that same night, I told mother that, in that drawer (pointing to the drawer), was Frank's deed; that it was in my hands—in my charge; that she should keep it locked and let nobody have the key, because in the morning I had to go to my home and would be back as soon as I could; she said I should attend to everything; she said she would not leave anybody at the drawer for she had the key in her pocket; this conversation was in the same room where father lay sick, and in his presence; he heard it." The widow, Katherine Brown, says: "We kept the bureau drawer locked; I and Frank, my man, had the key to it; we kept the key in another place in the bureau; I got a little box, and I kept the deeds in, and some letters that I got; I kept that box in that bureau drawer, and my husband and I kept all our deeds and important papers in that box." Joseph went home the next morning, and did not see his father again before his death. Andrew Medeke was present in the sick-room a part of the time that night, and saw the deceased point to the bureau, and heard him say to Joseph: "There was the deed; he should take it and give it to Frank." After the death of Frank Brown, Sr., his widow and his daughter, Julia Medeke, were present in the house. Julia and her mother examined the drawer, and found the deed in

it. Her mother directed her to take care of it; and Julia took the box containing the deed into her mother's bed-room, and put it under the bed-clothes, telling her mother where she had put it; and her mother expressed herself satisfied with her act in that regard. Joseph came the next morning, and Julia went with him into the room where the deed was; and he took it and handed it to her, and told her to take care of it for Frank; she took the deed and kept it until the next Monday, March 4, and then gave it to her brother Frank, who recorded it on March 4, 1895.

Looked at from one point of view, the foregoing evidence tends to show a delivery of the deed to Joseph for Frank. There is no doubt, that the deceased intended that Frank should have the deed at once and then and there. On Thursday, he stated both to his son, Andrew, and to his wife, Katherine Brown, that he had already given the deed to Joseph to be given by Joseph to Frank, or for Frank. He stated to his wife, that he regretted Frank's absence, and that if Frank had been present the deed would have been given to him. He several times expressed to his wife the desire, that the deed should go into the possession of Frank, not after his death, but at once. It is true, that there was here no manual delivery of the deed to Joseph as trustee for Frank, but the deed was present in the room and was pointed at by the deceased, and, in connection with the act of pointing at it, the deceased made the statement to Joseph: "There is the deed; take it and give it to Frank." If Frank Brown, Jr., had been present in the room, and the deceased had pointed to the deed, and had said to Frank: "there is your deed; take it;" and the latter had expressed his assent to its acceptance; there would have been a delivery of the deed, although there was no manual transfer of it from the hands of the grantor to the grantee. In *Weber* v. *Christen, supra,* we said (p. 96): "Where the grantor in a deed lying in the presence of the parties to it, with the

intention of passing the estate and of divesting himself of all power over the instrument itself, directs the grantee to take possession of it, and the latter signifies his assent, the delivery will be complete without either of the parties actually touching the deed.  *  *  *  Hence the oft-repeated saying in the books, that a deed may be delivered by some act without words, or with words without any act of delivery, or by words and acts both." We have also held that a deed may be delivered to a third person for the benefit of the grantee, and if the grantee subsequently accepts the deed, the delivery is as good as though made directly to the grantee.  (*Winterbottom* v. *Pattison*, 152 Ill. 334).  This being so, we see no difference between the act of the grantor in pointing to the deed in the presence of the grantee, and the act of the grantor in pointing to the deed in the presence of a third person, who is to hold for the benefit of the grantee and deliver it to the grantee; and who accepts the trust and executes it.

But without actually holding, that the occurrences, which took place between Joseph and his father and mother on the Wednesday night before the father's death, amounted to a delivery of the deed, if they are regarded as standing alone and disconnected from all the other facts in the case; yet we regard such occurrences, when considered in connection with all the other facts and circumstances herein detailed, as amounting to a delivery. The facts, that the father, upon making the deed, permitted the son to go into, or remain in, possession of the premises, and pay the taxes, and make valuable improvements, and pay him $300.00 a year for nine or ten years, and that he permitted this possession of his son to continue from the time of the execution of the deed up to his death—constitute an equitable estoppel against the contention of the present appellants, that there was no delivery of the deed.  (*Walker* v. *Walker*, 42 Ill. 311.)  The facts thus referred to bring the case at bar within the doctrine announced in *Williams* v. *Williams*, 148 Ill. 426, ex-

cept that, in the latter case, there was a recording of the deed, whereas in the case at bar the deed was not recorded until after the death of the grantor. In *Williams* v. *Williams, supra,* we said (p. 430): "Here the declaration of intention to convey the land, the execution of the deed, the recording of the same, the declaration of having made the deed, and the grantees entering on the land, repairing fences, clearing land and setting out fruit trees, are all shown, and this is sufficient to show a delivery and acceptance of the deed according to its terms." We have held, that, where the grantor, after the execution of the deed, continues to exercise acts of ownership and authority over the premises, and keeps possession of the land, and receives the rents from it, and pays the taxes on it until his death, these acts are inconsistent with the theory of an intentional delivery, operative and effectual to pass the title to the grantee. (*Cline* v. *Jones,* 111 Ill. 563; *Shults* v. *Shults,* 159 id. 654). If such exercise of ownership over the premises by the grantor after he has made the deed goes to show the absence of an intention to deliver the deed, then when the possession of the premises is delivered to the grantee without any further control over them by the grantor, and the grantee is permitted by the grantor to remain in possession, and make improvements, and pay taxes, and perform the conditions specified in the deed, such acts certainly indicate an intention on the part of the grantor that the deed should be delivered. It is settled by numerous authorities, that, where the grantor induces the grantee to believe that a deed has been executed, which makes him the owner of certain premises, and afterwards permits such grantee to act upon this belief in the construction of valuable improvements upon the land, he cannot then be allowed to say that the deed was, in fact, inoperative for want of a formal delivery. (*Walker* v. *Walker, supra; Reed* v. *Douthit,* 62 Ill. 348; *Hayes* v. *Boylan,* 141 id. 400; *Crabtree* v. *Crabtree,* 159 id. 342.)

Morever, in the present case, the deed, executed by the deceased to his son Frank, was in the nature of a voluntary settlement, although there was a provision in it that the grantee should contribute $300.00 per year to the support of his father and mother. The law makes stronger presumptions in favor of the delivery of deeds in cases of voluntary settlements than in ordinary cases of bargain and sale. (*Cline* v. *Jones, supra.*) In cases of voluntary settlements, the mere fact that the grantor retains the deed in his possession, is not conclusive against its validity if there are no other circumstances, besides the mere fact of his retaining it, to show that it was not intended to be absolute. (*Cline* v. *Jones, supra.*) "A deed will not be regarded as a voluntary settlement, if there are other circumstances, besides the retention of the deed by the grantor, showing that he did not intend it to operate immediately, or that he had an intention contrary to that appearing upon the face of the deed." (*Shovers* v. *Warrick*, 152 Ill. 355.) There are no circumstances in this case, beyond the mere fact of the retention of the deed by the grantor, which denote an intention contrary to that appearing upon the face of the deed.

The appellant, Katherine Weishar, introduced some testimony, intended to throw doubt upon the genuineness of the receipt for $1000.00 executed by her to her father. After a careful examination of the whole evidence we think that the receipt is genuine, and that it was executed by her at the time and place and under the circumstances mentioned in the evidence. Indeed, she herself admits that she received $1000.00 from her father, though her statement is that $875.00 was paid at one time and $125.00 at another. This receipt being valid, she is estopped from claiming any interest in her father's estate, because the receipt recites that it is "in full of my portion of the estate of said Frank Brown." Such releases of an heir's expectancy have been upheld by the courts as being valid. (*Bishop* v. *Davenport*, 58 Ill. 105, and cases therein cited).

Our conclusion upon the whole is, that there was a delivery of the deed executed by Frank Brown, Sr., to his son, Frank Brown, Jr., and that the decree of the circuit court in holding in favor of such delivery was correct.

Accordingly the decree of the circuit court is affirmed.

*Decree affirmed.*