(No. 32781.—)

MICHAEL DAVID, Appellant, *vs.* MICHAEL SCHILTZ *et al.,*
Appellees.

*Opinion filed September 24, 1953.*

JOHN CHIVARI, of Aurora, for appellant.

THOMAS J. BANBURY, of Aurora, and ROBERT J. SEARS, of Plano, for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

This appeal, involving a freehold, is taken from a decree of the circuit court of Kendall County which (1) reformed the legal description contained in four deeds in the chain of title to a four-acre tract of land, commonly known as "Four Acres," located in the town of Little Rock, (2) removed one deed as a cloud upon title, and (3) ordered partition of the premises.

The pertinent facts show that the four-acre tract was conveyed to one Amy L. Gregory in 1906 by a warranty deed which described the land as follows: "A part of the South-East Quarter (S.E. ¼) of Section Twenty Seven (27), Township Thirty Seven (37) North, Range Six (6) East of the Third (3) Principal Meridian, Commencing in the center of a public road at the North West corner of Steward's land; thence South 35° West 10.10 chains; thence North 33° West 4.63 chains; thence North 35° East 8.39 chains to said road; thence South 50° East along the center of said road 4.32 chains to the place of beginning, containing Four acres more or less." For convenience we shall refer to this as description "A."

In 1927, the premises were purchased from the heirs-at-law of Amy L. Gregory by Michael Schiltz, Jesse Sheer, Lyle Hansen and A. Moxey (also known as Alex Moxey, J. A. Moxey and James A. Moxey), who took title as tenants in common. The description in the deed effecting this conveyance, which we designate description "B," was as follows: "A part of the South-east Quarter (S.E. ¼) of Section numbered Twenty-seven (27) and a part of the South-west Quarter (S.W. ¼) of Section numbered Twenty-six (26), in Township numbered Thirty-seven (37), North, Range numbered Six (6) East of the Third Principal Meridian and further described by commencing at the Quarter section corner on the East side of said Section numbered Twenty-seven (27) and running thence South along the East line of said Section, Sixteen (16) chains and Five (5) Links to the center of the highway and place of beginning; thence North Fifty (50) Degrees West Three (3) Chains and Fifty-nine (59) Links; thence South Thirty-five (35) Degrees West Eight (8) Chains and Thirty-nine (39) Links to the center of Big Rock Creek; thence South Thirty-three (33) Degrees East along the center of said creek, Four (4) Chains and Sixty-three (63) Links; thence North Thirty-Five (35) Degrees East Ten (10) Chains and Ten (10) Links to the center of said highway; thence North Fifty (50) Degrees West along the center of said highway Seventy-three (73) Links to the place of beginning; containing Four (4) acres of land more or less." It is conceded that descriptions "A" and "B" substantially describe the same land consisting of some four acres, more or less.

Several years later, in April, 1930, Jesse Sheer, a bachelor and one of the tenants in common, executed a deed conveying to Michael Schiltz, for a recited consideration of $1, an undivided one-fourth interest in real estate which is described in the deed as follows: "An undivided one-fourth interest in and to a part of the Southeast quar-

ter of Section 27, Township 37 North, Range 6 East of the 3rd P.M., in the County of Kendall and State of Illinois, commencing in the center of a public road at the northwest corner of lands formerly belonging to Lewis Steward; thence south 35 degs. west 4.63 chains; thence north 35 degs. east 8.39 chains to said road; thence south 50 degs. east along the center of said road 4.32 chains to the place of beginning, containing four acres of land more or less." This description shall be referred to as description "C."

On August 1, 1938, J. A. Moxey, admittedly another of the tenants in common, executed a warranty deed in which he was joined by his wife, Rannie Moxey, wherein, for a recited consideration of $300, an undivided one-fourth interest in real estate described as in description "C" was conveyed to Michael Schiltz and his wife, Lena Schiltz, as joint tenants. A week later, the Schiltzes conveyed an undivided one-half interest to one R. Lucille Darnell, who immediately reconveyed to them as joint tenants. Description "C" was also employed in the latter two deeds.

An analysis of description "C" discloses that it describes only two intersecting lines lying partly within and partly without the premises described by descriptions "A" and "B." It is identical with description "A," the one employed in the deed by which Amy L. Gregory received title, except that the distance of one boundary is deleted by the omission of "10.10 chains" and the direction of the next course has been deleted by the omission from the course of the words "thence North 33 degrees West." A comparison of descriptions "A" and "C" makes it apparent that the scrivener who prepared the deed first using description "C," sought to use description "A" but, after reaching the words "degrees West" in one line, dropped down to the same two words in the following line, thus omitting the intervening description of the course. It is the four deeds described as containing description "C" which the trial court reformed to reflect description "B."

In July, 1947, approximately eleven years after Moxey and his wife had executed their deed to Michael and Lena Schiltz, Moxey died intestate leaving Ranghild Moxey (also known as Rannie Moxey), his widow, and Robert, Walter and Francis Moxey, his children, as his heirs-at-law. On May 2, 1951, Michael David, the appellant in this court, obtained a quitclaim deed from Ranghild Moxey which, for a recited "good and valuable consideration," conveyed and quit-claimed to David the grantor's interest in real estate described as in description "B." It is this deed which the decree of the circuit court removed as a cloud upon the title of appellees, Michael and Lena Schiltz. On the same day, David also purchased the undivided one-fourth interest of Lyle Hansen and received from him a deed employing description "B," that is, the description which had been used in the deed by which the Gregory heirs had conveyed to Schiltz, Sheer, Hansen and Moxey as tenants in common.

Based upon the deeds from Hansen and Ranghild Moxey, David filed a complaint for partition claiming an undivided one-half of the premises. The answer of Michael Schiltz and his wife, admitted that David was the owner of an undivided one-fourth as the result of Hansen's deed but denied that he had received any interest by virtue of the deed from Ranghild Moxey. They also filed a counter-complaint in which they claimed an undivided three-fourths interest in the premises, based upon the deed of the Gregory heirs and those from Jesse Sheer and J. A. and Rannie Moxey, and sought partition, reformation and removal of a cloud upon their title in the respects previously referred to. The trial court granted a motion striking David's complaint, overruled a motion to dismiss the Schiltz counter-complaint and entered a decree for partition on the counter-complaint, finding that Michael and Lena Schiltz were entitled to an undivided three-fourths interest in the tract and that David was entitled to an undivided one-fourth interest. The decree further reformed all deeds containing

description "C" to show description "B," ordered that the deed of May 1, 1951, from Ranghild Moxey to David be removed as a cloud on the title, and disallowed a claim made by David for the value of improvements, a point which shall be treated upon separately later in this opinion. David, to whom we shall hereafter refer as appellant, has prosecuted this appeal.

The errors assigned in this court are that the decree to reform the Sheer and Moxey deeds is not supported by the law or evidence; that the court erred in overruling appellant's motion to strike the countercomplaint by reason of the Statute of Frauds; and that the court should have allowed appellant's claim for the cost of improvements to the land on an equitable basis.

Subsequent to the start of this litigation, one Herbert Sheer, the sole heir-at-law of Jesse Sheer, the tenant in common who first conveyed his interest to Schiltz using description "C," executed a warranty deed to the appellees conveying an undivided one-fourth interest in real estate, described the same as in description "B," and reciting: "This deed is given to grantee and is intended as a title correction deed, intending hereby to correct the misdescription in the deed made by Jesse Sheer to said Michael Schiltz in which the premises aforesaid are misdescribed." At the trial, appellant's attorney stipulated that the share of Jesse Sheer in the property was not in dispute. The cross conveyances represented by the deeds exchanged between appellees and R. Lucille Darnell were given for the purpose of placing the title in appellees as joint tenants. R. Lucille Darnell was made a party to the countercomplaint, was defaulted by the court, and the countercomplaint taken as confessed by her. Thus the only deeds it is necessary to examine are the one of August 1, 1938, executed by J. A. Moxey and Rannie Moxey, his wife, to the appellees, and the one of May 2, 1951, from Ranghild Moxey to appellant. Moxey's widow and heirs were made parties defendant to the counter-

complaint but, when they filed no appearance or answer, were defaulted and the countercomplaint taken as confessed. Since appellant obtained his title to the contested one-fourth interest by the deed of Ranghild Moxey, he takes no better title than his antecedent, if any she had.

In the construction of deeds, it is the rule that the intention of the parties is the test by which to determine the effect of a deed, and that rule also applies to questions involving descriptions and boundaries. The intention must be gathered from the instrument itself and the admissible extraneous facts and circumstances. (*Branstetter v. Dahncke*, 394 Ill. 40; *Brunotte v. DeWitt*, 360 Ill. 518.) In ascertaining and giving effect to the intent of the parties to a deed, courts are not confined to a strict and literal construction of the language used when to do so would frustrate the intent of the parties, but the surrounding circumstances may be considered if they indicate the construction placed upon the words by the parties, or their practical construction of the instrument. (*Henry v. Metz*, 382 Ill. 297.) Commencing with the early case of *Worden v. Williams*, 24 Ill. 67, this court has repeatedly held that it is within the jurisdiction and is the duty of courts of equity to correct mistakes in conveyances by reformation. In treating upon this duty in *Ambarann Corp. v. Old Ben Coal Corp.* 395 Ill. 154, we stated, (p. 166): "To reform an instrument upon the grounds of mistake, the mistake must be of fact and not of law, mutual and common to both parties, and in existence at the time of the execution of the instrument, showing that at such time the parties intended to say a certain thing and, by a mistake, expressed another. Before a deed will be reformed, satisfactory evidence of mistake must be presented, and the evidence must leave no reasonable doubt as to the mutual intention of the parties, a mere preponderance of the evidence being insufficient." Again, in *Tope v. Tope*, 370 Ill. 187, which appellant advances as controlling in this case, we said,

(p. 191): *"Patterson v. Patterson,* 251 Ill. 153, holds the facts upon which reformation may be granted should be so convincing as to leave no reasonable doubt in the mind of the court. And in *Christ v. Rake,* 287 Ill. 619, it is said: 'Where contracting parties have reduced their agreement to writing it is presumed to express their mutual intention, and that presumption does not yield to any claim of a different intention unless the evidence of a mutual mistake is of a strong and convincing character. A written instrument will not be reformed on the ground of mistake unless the evidence that it does not express the intention of the parties is such as will strike all minds alike as being unquestionable and free from reasonable doubt. The remedy of reformation on account of an alleged mistake is never granted upon a probability nor upon a mere preponderance of the evidence but only upon evidence amounting to a certainty.' "

Appellant does not deny the general power and duty of equity to reform deeds but contends that reformation should not be allowed in this case because of a total lack of evidence showing that the questioned deed resulted from a mistake of fact, mutual and common to both parties, or evidence showing that the parties to the Moxey-Schiltz deed intended to say one thing and, by mistake, said another. The vital issue in this proceeding is the description of the property these parties intended to be conveyed and in resolving that issue, as seen by the rules heretofore expressed, we must consider the circumstances and place ourselves in the situation of the parties to the deed. We must consider the objects they wished to attain and the objects they had in mind, as well as those which they did not have in mind and could not attain. (*Texas Co. v. O'Meara,* 377 Ill. 144.) Approached in this manner, we think the record is more than sufficient to show what the parties to the questioned deed intended to convey and that such intention was, with certainty, defeated by an erroneous description

of the property as conveyed, a mistake which was necessarily one of fact and which, the circumstances show, was mutual and common to both parties.

First of all, the questioned deed itself contains two descriptions of what was intended to be conveyed, one description being by course and distance, the other by quantity. When the specific description by course and distance is projected on a surface, it produces only two intersecting lines which enclose no area, yet the general description by quantity, indicates that an area of four acres was intended to be conveyed. While we are not unaware of the rule which holds that description by quantity must yield to a specific description, both may be considered in ascertaining what the parties intended to convey. As the facts appear here, the incompatability of the two descriptions demonstrates that a mistake occurred and, since the specific description describes only two intersecting lines, lends support to a conclusion that the parties, by mistake, did not say what was intended in the specific description. The record also shows that the two intersecting lines fall partly within and partly without the four-acre tract in which Moxey and Schiltz admittedly shared an interest as tenants in common. Putting ourselves in the situation of the parties, it is reasonable to assume that Moxey intended to convey, and Schiltz to buy, only that land in which Moxey had an interest. It is unreasonable to assume that Moxey intended to convey property he did not own, or that Schiltz would think he could. Further, in regard to the deed, it is apparent that Moxey would be performing a useless act and conveying nothing by a deed describing two intersecting lines and it is most certain that Schiltz did not pay the recited consideration of $300 for such a nebulous interest.

Other facts shown by the evidence are that Moxey asserted no proprietary rights over the premises following the conveyance to Schiltz and, subsequent to that date, no longer contributed to the payment of taxes, his share

thereof being assumed by his grantee, Schiltz. In this manner the construction placed upon the deed by the parties themselves indicates what they intended and thought they had attained by their deed. Other extraneous circumstances which may be considered are that the tract of land involved was the only land in which the two men had any common interest. If either party to this appeal is to have any standing in this, or any, court it must be admitted that description "A," which was employed in the deed by which Amy L. Gregory received title, substantially described the four-acre tract involved. A comparison of description "A" with description "C," used in the Moxey to Schiltz deed, shows the only difference to be the deletion of one course and one boundary in description "C." The fact that the deletion occurs between the use of the word "West" in separate lines of description "A" reasonably gives rise to an inference that description "C" arose from a scrivener's error and that description "A" was, in fact, the one intended by the parties.

Looking to the disputed deed itself, the relationship of the parties, the interpretation the parties themselves placed upon the instrument, and to the other circumstances which reflect their true intent, we are of the opinion that it emerges clearly and without question that the parties intended that the deed convey to Schiltz all of Moxey's interest in the four acres but, by mutual mistake of fact, did not execute a deed which completely reflected that intention. The chancellor properly allowed reformation of this and of the other deeds employing the faulty description.

The next error assigned is that the trial court erred in overruling appellant's motion to dismiss appellees' counter-complaint on the ground that allegations therein relating to verbal agreements between Schiltz and Sheer and between Schiltz and Moxey for the purchase of interests in the land in question were improperly pleaded insofar as they did not comply with the Statute of Frauds. An exam-

ination of the pleading discloses allegations of oral contracts, both with Sheer and Moxey, for the purchase of their interests in the four-acre tract; an allegation that appellee Schiltz had performed the contract by payment of consideration and that Sheer and Moxey had performed by the execution and delivery of their deeds, in which deeds there had been a mutual mistake as to the description of the property conveyed. It is appellant's contention that since an agreement to sell real estate is within the Statute of Frauds, the complaint setting up oral contracts was insufficient at law. The Statute of Frauds cannot be invoked to avoid a contract that has been carried into execution. (*People* v. *Tombaugh,* 303 Ill. 591; *Pearce* v. *Pearce,* 184 Ill. 289; *Swanzey* v. *Moore,* 22 Ill. 63.) Further, in *Fleming* v. *Dillon,* 370 Ill. 325, and *Ropacki* v. *Ropacki,* 354 Ill. 502, we held that an oral contract, even for the future conveyance of land, is not within the Statute of Frauds if it has been completely performed by one party. Where, pursuant to an oral sale of land, the consideration is fully paid and possession given the purchaser, there is sufficient performance to take the agreement out of the Statute of Frauds. (*Pasquay* v. *Pasquay,* 235 Ill. 48.) Applying the principle announced in the foregoing cases to the allegations of performance and possession contained in the countercomplaint, it is manifest that the court did not err in denying the motion to dismiss. Additional support for the court's ruling is found in those cases which hold that the Statute of Frauds cannot be interposed by strangers to the agreement. *People* v. *Tombaugh,* 303 Ill. 591; *Pasquay* v. *Pasquay,* 235 Ill. 48.

The remaining error assigned has to do with the cost of a road appellant constructed on the land involved. The pertinent facts show that there are two cottages on the four-acre tract; one built by Schiltz and the other by Hansen, who conveyed to appellant. The tract is bounded on one side by a graveled public road and on the opposite

side by a creek. The Schiltz cottage is located in the proximate center of the tract, while the David cottage is nearer the creek. In 1927, before appellant's cottage had been built, Schiltz installed a gravel road leading from the highway to his cottage and, in 1951, that was the only usable road on the premises. Appellant's cottage was approximately two hundred feet from such road and, at certain times of the year when the creek overflowed, it was difficult to get from the road to his cottage. Appellant, therefore, constructed a gravel road from the highway to his own cottage at a cost of approximately $1100. Though it does not appear clearly in the pleadings, appellant apparently made some claim for the cost of the improvement. In its decree the trial court disposed of the claim with this finding: "8. That the claim of Michael David for gravel and labor does not constitute a permanent and valuable improvement to said real estate and was made for his sole benefit, without the consent of the co-owners of the land."

Appellant does not challenge this finding as being against the manifest weight of the evidence but assigns as error that "The court should have allowed the counter-defendant [appellant] his claim for the cost of improvements made to the land on an equitable basis." In assigning this error appellant admits that he introduced no testimony of values or evidence that the alleged improvement had increased the value of the land. In *Heppe* v. *Szczepanski,* 209 Ill. 88, and *Manternach* v. *Studt,* 240 Ill. 464, we stated the rule to be that where improvements are made by one tenant in common without the knowledge or consent of the others, compensation allowed for the improvements on partition should be estimated so as to inflict no injury upon the cotenant against whom the improvements are charged and, if possible, the court should allot the portion improved to the one making the improvement without taking into account the value of the improvement. If such a division cannot be made the court will, upon proper proof being made, allow

to the one making the improvement the increased value of the premises caused thereby, but not the cost of the improvement. In this case, as in the cited cases, there was no evidence of values from which the trial court or this court could ascertain what ought to be done about the alleged improvement. In addition, and more important, the court also made a finding, which is not challenged, that the alleged improvement was not a permanent or valuable improvement. In either case, therefore, the contention that appellant should have been compensated for the cost of the improvement must fail.

The decree of the circuit court of Kendall County was correct and is affirmed.

*Decree affirmed.*