VIRGINIA M. ROOTS, Conservator of the Estate of Helen E. Hellrigel, Plaintiff-Appellee, v. IRA F. UPPOLE et al., Defendants-Appellants.

Third District   No. 79-59

Opinion filed February 7, 1980.—Rehearing denied March 10, 1980.

Medley A. Tornow, of Safford, West, Tornow & Mathers, of Peoria, and David E. Muschler, of Chicago, for appellants.

Paul G. Bradshaw, of Peoria, for appellee.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Plaintiff Virginia M. Roots, conservator of the estate of Helen F.

Hellrigel, commenced this proceeding by filing a petition to quiet title in the circuit court of Peoria County against the defendants, Ira F. Uppole, Joy E. Uppole, and Prospect National Bank of Peoria. Count I of plaintiff's petition sought to have a quit-claim deed conveying a property of Mrs. Hellrigel's to the Uppoles and a subsequent mortgage from the Uppoles to the bank declared void because of an insufficient legal description. Counts II and III, directed against the Uppoles alone, sought to have the deed declared void due to the conveyance being made under undue influence and duress. Defendants Uppole counterclaimed for reformation of the deed, and the cause proceeded to a bench trial. Judgment for defendants Uppole as to counts II and III was granted at the close of plaintiff's evidence. Judgment for plaintiff as to count I and the counterclaim was rendered at the close of all evidence, and defendants appeal this latter judgment.

On April 25, 1975, Helen Hellrigel conveyed the disputed property to Ira Uppole, her grandson, and his wife, Joy, by quit-claim deed. The legal description contained in the deed provided in pertinent part:

> "Part of Lot Three (3) of a Subdivision of the South West Quarter of Section Twenty-two (22), Township Nine (9) North, Range Eight (8) East of the Fourth Principal Meridian, more particularly bounded and described as follows to wit: Beginning at a point One Hundred (100) feet North of a point Four Hundred Seventy-Five and Twenty-Six Hundredths (475.26) feet East of the West line of Lot Three (3) in said Subdivision; thence North One Hundred (100) feet; thence East at right angles Sixty-Nine and Nine Tenths (69.9) feet; thence South at right angles One Hundred (100) feet; thence West at right angles, Sixty-Nine and Nine Tenths (69.9) feet to the place of beginning: * * * ."

Defendants Uppole had previously resided on the subject premises and after the property was quit-claimed to them, made substantial improvements thereto. On June 5, 1975, defendant Prospect National Bank accepted a mortgage on the aforementioned property from the Uppoles as security for a loan to them. Subsequent to the execution of this mortgage, attorney Daniel L. Furrh, the deed's draftsman, discovered that he had inadvertently omitted the language "on the North line of West Toledo Avenue, as now laid out" from the description. An affidavit to this effect and new mortgage with corrected description were recorded March 29, 1976. The trial court held the affidavit was insufficient to correct the description as there were "many subdivisions" in the quarter section and held the deed and mortgage clouds on title, illegal, and void. We are called upon to decide whether the description is void for uncertainty and, if so, whether the deed may be reformed.

■■ A deed speaks for itself, and its construction is dependent upon the

language used. (See *Department of Transportation v. Western National Bank* (1976), 63 Ill. 2d 179, 347 N.E.2d 161, 164, *appeal after remand* (1978), 69 Ill. 2d 576, 373 N.E.2d 14; *Patton v. Vining* (1958), 14 Ill. 2d 11, 150 N.E.2d 606, 607; *Law v. Kane* (1943), 384 Ill. 591, 52 N.E.2d 212, 214.) Where there is no ambiguity in the terms used, the instrument itself is the only criterion of the intention of the parties and there is no need for construction. (See *Department of Transportation v. Western National Bank*; *Ambarann Corp. v. Old Ben Coal Corp.* (1946), 395 Ill. 154, 69 N.E.2d 835, 840; *Fowler v. Black* (1891), 136 Ill. 363, 26 N.E. 596.) Where, however, an uncertainty as to a description of land exists, construction serves to ascertain the intention of the parties from a consideration of the deed as a whole (see *Watts v. Fritz* (1963), 29 Ill. 2d 517, 194 N.E.2d 276, 278; *Miller v. Ridgley* (1954), 2 Ill. 2d 223, 117 N.E.2d 759, 761; *Magnolia Petroleum Co. v. West* (1940), 374 Ill. 516, 30 N.E.2d 24, 26) and from admissible extrinsic evidence of the facts and circumstances regarding the transaction (see *Miller v. Ridgley*; *David v. Schiltz* (1953), 415 Ill. 545, 114 N.E.2d 691, 695; *Branstetter v. Dahncke* (1946), 394 Ill. 40, 67 N.E.2d 212, 214), keeping in mind where there is an ambiguity or question in construing a deed, it should be construed most favorably on behalf of the grantee (see *A. S. & W. Club v. Drobnick* (1962), 26 Ill. 2d 521, 187 N.E.2d 247, 249; *Patton v. Vining* (1958), 14 Ill. 2d 11, 150 N.E.2d 606, 608; *Allendorf v. Daily* (1955), 6 Ill. 2d 577, 129 N.E.2d 673, 680).

■■ Applying these principles to the case at bar, we first consider the description itself. An examination of the deed reveals a rectangular parcel 100 feet by 69.9 feet with a beginning point 100 feet north of a point 475.26 feet east of the west line of lot 3 of a subdivision of a clearly identified quarter section. As this description is uncertain as to the location of the starting point, we must determine whether the ambiguity can be eliminated by the use of extrinsic evidence to gauge the parties' intention. An examination of the land records of Peoria County reveals that since the platting of the subdivision of Peoria Heights, the designated west line does not extend south of the north boundary of West Toledo Avenue. Those records also indicate, as revealed in Attorney Furrh's affidavit, that the grantor owned only one parcel of land in said Lot 3 and that parcel fronted on 69.9 feet of West Toledo Avenue and was 200 feet in depth. There is only one point of beginning which delineates a parcel of land owned by the grantor, that being "on the north line of West Toledo Avenue" which corresponds to Attorney Furrh's scrivener's omission. There is a presumption that a grantor in executing a deed intended to convey only property which he owned. See *Allendorf v. Daily* (1955), 6 Ill. 2d 577, 129 N.E.2d 673, 681; *Brenneman v. Dillon* (1920), 296 Ill. 140, 129 N.E. 564, 566.

This result is supported by additional information from the land records and from testimony at trial. The records indicate that while there are several subdivisions in the relevant quarter section, there is only one subdivision of the quarter section, platted in 1891 and embracing the entire southwest quarter at that time. Thus no greater specificity could be included in its description. While much of the testimony at trial was controverted, Mrs. Hellrigel's son, Robert Hellrigel, testified that he showed his mother exactly what property would be granted and retained under the deed. He did this by physically measuring 100 feet from the north line of West Toledo Avenue in her presence and identifying the tracts.

Attorney Furrh testified that a copy of the deed was sent to Mrs. Hellrigel's personal attorney and no objection was raised. He further testified that a water meter was removed from the tract to be retained and replaced on the tract in question, and this was confirmed by Robert Hellrigel. As previously mentioned, the premises had been occupied and improved by the Uppoles, who had also paid real estate taxes for the property.

■■ Considering the totality of the evidence and presumption favoring the grantee, we cannot agree that the fact that there are "many subdivisions" in the relevant quarter section justifies the voiding of the quit-claim deed and mortgage. While the description itself is insufficient to identify a single parcel of land, the extrinsic evidence presented clearly enables the identification of the parcel intended for conveyance by the parties.

We next consider the appropriateness of reformation under these circumstances. A court of equity will reform a deed or other instrument of writing upon the ground of mistake provided that the mistake is one of fact rather than law, the proof clearly and convincingly shows a mistake was made, and the mistake was mutual and common to both parties to the instrument. (*E.g., Skelly v. Ersch* (1922), 305 Ill. 126, 137 N.E. 106.) That a mistake is present in the description at bar is clear not only from its failure to state a point of beginning but from the recorded affidavit as well.

■■ The first prong of equity's inquiry is whether the mistake is one of fact or law. Here the description failed to define the parcel agreed upon by the parties and therefore was a mutual mistake of fact. The evidence of the mistake was clearly and convincingly shown by examination of land records and parol evidence, including the affidavit and testimony of the attorney who prepared the deed. The mutuality of the mistake is apparent, as it is a scrivener's error. While this alone might justify reformation (*Worden v. Williams* (1860), 24 Ill. 67), it also indicates the parties failed to realize the deed did not express their true agreement,

their mutual mistake being believing the instrument reflected this agreement. Under these circumstances we hold reformation should have been granted.

■■ ■ Plaintiff contends that reformation of an instrument conveying property as a gift, as in the case at bar, can only be granted at the suit of the donor. Defendants' objection that this issue cannot now be raised overlooks the fact that an appellee may defend a judgment on review by raising an issue not previously ruled upon by the trial court if the necessary factual basis for the determination of the issue is contained in the record. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417; *Shaw v. Lorenz* (1969), 42 Ill. 2d 246, 246 N.E. 285; *LaSalle National Bank v. Grayslake* (1963), 29 Ill. 2d 489, 194 N.E.2d 250.) After the execution of the deed, however, defendants Uppole made substantial improvements to the subject premises. Where a grantee, with the consent of the grantor, is permitted to take possession of premises within the general terms of a description, and occupy and make general improvements upon them, the grantor will be estopped to urge the uncertainty of the description, and a court of equity will compel the execution of a deed properly describing the lands intended. *Cf. Rodemeier v. Brown* (1897), 169 Ill. 347, 48 N.E. 468; *Purinton v. Northern Illinois R.R. Co.* (1867), 46 Ill. 297; see *Chicago & Alton R.R. Co. v. Langer* (1919), 288 Ill. 16, 123 N.E. 61.

Accordingly, the order of the circuit court of Peoria County granting plaintiff's petition is reversed, and the supplemental order of the court denying defendants' counterclaim is reversed and remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

BARRY and SCOTT, JJ., concur.