(No. 33505.—

EDITH ALLENDORF, Appellant, *vs.* GENEVIEVE DAILY *et al.,* Appellees.

*Opinion filed September 23, 1955—Rehearing denied Nov. 21, 1955.*

578

AMOS H. ROBILLARD, and GRANGER, BECKERS & SNOW, both of Kankakee, (JOHN H. BECKERS, of counsel,) for appellant.

MALO, NELSON, BROCK & SHEARON, of Watseka, (DALE W. MARKWALDER, of counsel,) for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

The plaintiff, Edith Allendorf, has appealed and the defendants, Genevieve and Martha Daily, have cross-appealed from a decree of the circuit court of Kankakee County establishing plaintiff's rights under a grant of right-of-way easement, enjoining the plaintiff from encroaching beyond such right of way as so established, and assessing punitive damages against the plaintiff for trespassing upon the defendants' land.

Since the right to a perpetual right-of-way easement over land is in issue a freehold is involved warranting direct appeal to this court. *Poulos* v. *Hill Co.* 401 Ill. 204; *Housing Authority* v. *Church of God,* 401 Ill. 100; *Wiley* v. *Lamprecht,* 400 Ill. 587.

The complaint filed by the plaintiff prayed for an injunction restraining the defendants from interfering with plaintiff's use of an alleged two-rod-wide right-of-way easement strip over the east side of defendants' 80-acre farm as a means of ingress to and egress from lands owned by the plaintiff and for damages to such right-of-way strip.

The defendants' answer denied the right of plaintiff to such an easement, and their counterclaim asserted that the

alleged easement was void in its inception or had been abandoned, and prayed that it be removed as a cloud on defendants' title. Such counterclaim further alleged that the east boundary of the defendants' 80-acre farm is a fence, but the true east line of such 80 acres lies east of the fence, the distance varying from 13 to 17 feet, and, in the alternative, prayed that the plaintiff be enjoined from entering any part of the defendants' land which is more than two rods west of the true boundary of the 80 acres. The counterclaim further set up a charge of trespass and claim for damages.

In addition to general denials of the counterclaim, plaintiff set up affirmative defenses of *res judicata,* easement by implication, and easement by adverse possession.

The special master to whom the case was referred, after hearing extensive testimony and arguments and considering the briefs of counsel, reported detailed findings, conclusions and recommendations to the trial court. Objections by both parties to the master's findings, conclusions and recommendations were overruled and allowed to stand as exceptions and the trial court approved and incorporated the master's findings, conclusions and recommendations in its final decree.

The final decree adjudged an easement by express grant to the plaintiff of that portion of the east two rods of the southwest quarter of section 29, township 30 N., range 12 W. of 2d P.M. in Kankakee County, lying immediately west of the division fence located on said two rods, said easement being for the benefit of certain lands owned by the plaintiff in said section and those lands only; restrained plaintiff from using said easement for the benefit of other land owned by the plaintiff, from entering or using any portion of the west 78 acres of the east half of the southwest quarter of section 29, township 30 N., range 12 W. of 2d P.M. in Kankakee County, from removing or interfering with gates at either end of the easement except

opening and closing thereof; found the plaintiff guilty of willful trespass and assessed special damages against her; ordered the plaintiff to keep the easement in repair and restrained the defendants from interfering with the lawful use of the easement.

The errors relied on by plaintiff-appellant for a reversal in substance are as follows: (1) The court erred in holding that the east two rods constituting the right of way was to be measured from the true east line of the 80 acres in question instead of the division fence and should have held that there was latent ambiguity in the description of the easement in the master's report and deed which could be removed by parol evidence and on such basis should have held that plaintiff was entitled to an easement two rods wide measured westerly from the division fence along the east line of defendants' 80 acres; (2) the court erred in failing to hold that the plaintiff had an easement by implication to the two-rod strip in question; (3) the court erred in failing to hold that plaintiff had an easement by adverse possession in the two-rod strip in question and (4) that the court erred in assessing actual and punitive damages against the plaintiff.

The defendants-appellees and cross-appellants rely on five errors in substance for reversal as follows: (1) That the court erred in holding the right of way as set off by the partition commissioners was valid; (2) the court erred in holding that there was no abandonment; (3) the court erred in failing to find that the plaintiff was estopped from claiming the right of way; (4) the court erred in holding the special and punitive damages assessed were adequate and, last, the court erred in finding the costs and expenses should be borne equally by the parties except as to witness fees.

The principal issue to be decided is to what extent, if at all, the plaintiff had a right to the use of a two-rod strip of land along the east side of the 80-acre tract in

issue. The problem was created many years ago in a partition suit and master's deed and has given rise to high personal feeling between the litigants as shown by the voluminous conflicting evidence as to what has occurred over the intervening years up to the present time in relation to the claimed easement. However, there is apparently no dispute over the facts and circumstances surrounding the origin of the so-called grant or easement.

In 1899 Thomas Daily, Sr., was the owner of some 160 acres of land situated in the north half of section 29, township 30 N., range 12 W. of the 2d P.M. in Kankakee County. On October 2, 1899, he purchased at an administrator's sale to pay debts the east half of the S.W. ¼ of said section 29, which is now owned by the Daily sisters, defendants herein. Peter Boudreau, Sr., was the owner of the land lying immediately east of said 80 acres. During his lifetime Thomas Daily, Sr., brought an action against Peter Boudreau, Sr., for trespass *quare clausum fregit*. The survey at that time showed that the true east line of the east half of the southwest quarter of said section was east of a division fence, varying from some 18 feet at the north to some 13 feet at the south. This court, in *Daily* v. *Boudreau,* 231 Ill. 228, held that Thomas Daily's action was barred by the Limitations Act since the defendant Boudreau occupied the land up to the fence for twenty years, claiming to own it, it being immaterial whether he supposed the division fence to be the true line or not. Thomas Daily, Sr., died testate on or about August 20, 1913, and by the terms of his will and of a codicil thereto he devised all of his real estate equally between his seven children, with the proviso, however, that his son, Matthew Daily, should take only a life estate in his undivided one-seventh with a vested remainder therein to his six children, among whom were Genevieve Daily and Martha Daily, the defendants here, subject, however, to the condition that the said children should not have the power to give, grant, convey, sell,

mortgage or encumber such real estate in any manner except to each other until they severally attained the age of 30 years.

On September 18, 1916, Mary A. Kelly, one of the heirs and devisees of Thomas Daily, Sr., filed her suit in partition in the circuit court of Kankakee County against all the heirs and devisees of her deceased father seeking partition of all of the land owned by Thomas Daily, Sr., at the time of his death. Matthew E. Daily and all of his six children, including the defendants in this litigation, who were minors at the time, were made parties to said suit and they were duly served with process or by publication and mailing as required by law. A guardian *ad litem* was appointed for the infant defendants, who filed an answer. Upon a hearing in said partition suit the court entered a decree setting aside alleged clouds on title, finding that each of the children of Thomas Daily, Sr., except Matthew E. Daily, were entitled to an undivided one-seventh interest in fee in all the lands and that Matthew E. Daily was entitled to an undivided one-seventh for life with remainder in his six children, and decreeing that the several tracts be partitioned, and appointing commissioners to make partition if such partition was possible or, in case partition could not be made without manifest prejudice to the parties in interest, then said commissioners were to fix the value of each part and parcel of the land. Thereafter, the commissioners reported that after taking the oath to partition the property they went upon the premises and they set off to Matthew E. Daily for life, with remainder to his six children, naming them, the premises described as the east half of the southwest quarter of section 29, township 30 N., range 12 W. of the second principal meridian (being the 80 acres here in question) as their full share in said land, quality and quantity considered, subject to a right of way two rods in width off the east side thereof leading to the public highway on the south

thereof for the benefit of the balance of the lands in said section 29, and reporting that the balance of said land could not be partitioned without manifest prejudice to the parties in interest. Upon hearing the court approved said commissioners' report and entered a decree vesting in Matthew E. Daily for life and to his six children, naming them, the remainder in and to the premises set off to them in fee simple as tenants in common subject to a right of way over the east two rods thereof for the benefit of the balance of said land in said section 29 and subject to the condition that they should not have the power to give, grant, convey, sell, mortgage or encumber said real estate in any manner except to each other, until they severally attained the age of 30 years. The court further ordered that the premises not set off to Matthew Daily and his children, including the right of way, be sold at public auction to the highest bidder. The master in chancery duly advertised the remainder of the premises for sale pursuant to the terms of such decree and at said sale, as reported by the master, Thomas A. Daily was the highest and best bidder and the premises were struck off to him. The master in chancery's report was duly approved and the master was ordered to make distribution of the proceeds of the sale. On March 1, 1917, pursuant to said decree of sale, the master in chancery duly conveyed to Thomas A. Daily the balance of the premises in question including "a right of way two rods wide along the east side of the East Half of the Southwest Quarter of Section 29 last aforesaid, for the benefit of the other of said lands in Section 29."

Thomas A. Daily, the purchaser at the master's sale above set forth, had purchased in 1903 the south half of the south half of the northwest quarter of said section 29, hereinafter referred to as the Plummer 40, which 40-acre tract lies immediately north of the defendants' 80-acre tract. Thomas A. Daily continued to own the Plummer 40 and the property purchased at the master's sale to the time of

his death intestate in 1947, leaving his widow and one daughter as his sole heirs-at-law. The heirs-at-law of Thomas A. Daily in 1949 conveyed all of the lands which he owned in section 29 including the two-rod easement strip in dispute to Carl and Edith Allendorf, as joint tenants. Carl Allendorf died on February 23, 1950.

By various mesne conveyances the defendants have become the owners of the property set off in the partition suit to their father Matthew Daily for life with remainder to his six children.

Although none of the foregoing facts are in dispute the evidence is both voluminous, conflicting and inconsistent as to the facts of user of said easement, of abandonment thereof, of easement by implication and of easement by adverse user. A summary and analysis of the testimony of the various witnesses is not necessary at this point, but we should note that both the master and court found that the evidence was sufficient to show that from time to time the two-rod strip in question was used as a means of ingress and egress to the various tracts of land purchased by Thomas A. Daily at the partition sale; that at no time did Thomas A. Daily abandon the right of way conveyed to him under the deed; that there was no easement by implication at the time of division of lands by the commissioners nor subsequent thereto; that the evidence was not sufficient to establish that the use of the strip was adverse or that it was continuous and uninterrupted sufficient to give an easement by adverse possession.

It is well established that where a master in chancery hears evidence and makes findings thereon and such findings are approved by the chancellor, who considers the evidence on exceptions taken thereto, such findings will not be disturbed by the Supreme Court unless manifestly against the weight of evidence. (*Rose* v. *Dolejs*, 1 Ill. 2d 280; *Midland Electric Coal Corp.* v. *Knox County*, 1 Ill. 2d 200; *Freymark* v. *Handke*, 415 Ill. 360.) We cannot say that

the master's or the court's findings on the issues presented are manifestly against the weight of the evidence, so we must conclude for purposes of further consideration of this case that the facts above found by the trial court are resolved.

Defendants' contention that the purported easement is invalid must be first resolved. Their contention that the partition commissioners had no jurisdiction to create an easement is not valid. It was and is a partition commissioner's primary duty to make fair and impartial partition if possible, quantity and quality considered, and if not so possible to appraise and fix the value of the lands. In order to equalize allotments of land which is incapable of exact or fair division, they clearly may charge one portion with an easement in favor of another portion. (68 C.J.S., sec. 142, p. 233.) Although it is true that neither the commissioners nor the court in a partition suit have any power to fix building lines or other restrictions merely because they believe the value of the property will be thereby best served, yet the opinion of this court so holding at the same time clearly indicates that certain restrictions may be so imposed in a proper case, if necessary, to make the partition fair and impartial. (*Warren* v. *Sheldon*, 173 Ill. 340.) Clearly the commissioners and court had the power, as such, to burden one portion of the partitioned estate with an easement in favor of another portion if necessary to provide a fair and impartial partition, and the partition decree attacked in this suit is not void for want of power or jurisdiction.

Defendants further contend that the easement is invalid for the reason that the terminus of the alleged right of way does not join the dominant estate, citing *Garrison* v. *Rudd*, 19 Ill. 563. The basis of their argument is that the other lands owned by Thomas Daily, Sr., and purchased at partition sale by Thomas A. Daily did not lie adjacent to any of the boundary lines of defendants' 80 acres, that

Thomas A. Daily already owned the Plummer 40 acres to the north over which passage was necessary to enjoy the easement and the court lacked jurisdiction over such intervening land. The weight of authority on this question is to the effect that there is no necessity that the dominant tenement, to which the easement is appurtenant, should join the servient tenement which is subject to the easement, if both dominant and servient tenements are clearly defined. (Tiffany on Real Property, 2d ed., vol. 2, p. 1224; *Goodwillie* v. *Commonwealth Electric Co.* 241 Ill. 42.) As held in the *Goodwillie case,* an easement may be considered appurtenant if it clearly appears to have been the intention that it should be that way, although the dominant and servient estates do not join. The decision in the *Garrison case* is not in conflict with such principle. There a common-law action of trespass *quare clausum fregit* held that there are two essential parts to a private way, first, a beginning and an end, and second, that the grantor (or dominant estate) has the right as distinguished from mere privilege of starting out at the beginning and proceeding to the end of the way. Language is used therein that an easement is said to be appurtenant when incident to an estate, one terminus being on the land of the party claiming, must inhere in the land and concern the premises. The language used indicates an easement is considered appurtenant when one terminus is on land of the party claiming but does not say it must be—it only must inhere in or concern the land. Here the dominant and servient estates were clearly set out in the partition decree and master's deed, and contiguity was not necessary to validity.

Defendants further assert the easement is invalid because the clause in the will of Thomas Daily, Sr., preventing any of testator's children from granting, selling, conveying, etc., in any manner, except between themselves, their individual shares, precluded its creation. Such argument is invalid for the simple reason that none of the

children have so dealt with their individual shares. The share of the Matthew Daily children, including defendants, was the 80-acre tract here in question, burdened with a two-rod easement, as determined by the court. The share of the other children was the remaining land, increased by the value of the appurtenant easement. Any burden imposed on any land was the act of the court in determining the children's share under the will, and not the act of any child.

It must also be noted that the court not only had jurisdiction of the subject matter of the partition suit, but also of the persons of the defendants thereto, including the defendants in the present litigation. The court had the jurisdiction and the power to create the easement here in question, and the defenses here urged could have been properly urged, and should have been urged, at that time. Although such decree might be erroneous, nevertheless it is binding as to all matters which might have been decided, (*Harding Co.* v. *Harding,* 352 Ill. 417,) until reversed. (*Hunter* v. *Empire State Surety Co.* 261 Ill. 335.) Although the present defendants were infants at the time of said litigation, they were represented by a duly appointed guardian *ad litem,* their disability has long since been removed, and the partition decree is binding upon them unless reversed within two years after removal of the disability. (*McReynolds* v. *Miller,* 372 Ill. 151.) The decree was not so reversed and they are bound by its terms. Whatever title they have is deraigned from that partition proceeding and decree. As indicated in *Turpin* v. *Dennis,* 139 Ill. 274, there was but error and irregularity at the most in such proceeding and it cannot now be attacked collaterally. The defendants, in substance, assert that the portion of the partition decree to which they were parties, setting off the 80 acres to them, was valid but that the portion burdening the same 80 acres with an easement was invalid and void. This they cannot do. While enjoy-

ing the advantages they must suffer the disadvantages of it. We must conclude that the purported easement is valid and binding upon the defendants.

The easement being valid, the next question raised and argued is the location of the easement. The legal description thereof, contained in the commissioners' report, the partition decree, and the master in chancery's deed is in and of itself clear and of common understanding, being "a right of way two rods wide along the east side of the East Half of the Southwest Quarter of Section 29" etc. The trial court on such basis held that the two rods granted are to be measured west from the true east line of the quarter section. The plaintiff contends this was error, that there was a latent ambiguity in the description, and that the two-rod easement should be measured from the division fence which was the east line of the property owned by Thomas Daily, Sr., at the time of his death.

The legal principles concerning latent ambiguities, although at times difficult to apply to the facts of a given case, seem to be generally recognized. A latent ambiguity occurs where a writing appears on its face clear and unambiguous, but which, in fact, is shown by extrinsic evidence to be uncertain in meaning; or where a description apparently plain and unambiguous is shown to fit different pieces of property, and in such cases, the ambiguity being raised by extrinsic evidence, the same kind of evidence may be admitted to explain it or identify the property referred to in the writing. (*Logue* v. *Von Almen,* 379 Ill. 208; *Weber* v. *Adler,* 311 Ill. 547; *Harmon* v. *People ex rel. Munsterman,* 214 Ill. 454.) A latent ambiguity in a contract can be explained by parol evidence. (*Higinbotham* v. *Blair,* 308 Ill. 568.) In construing a written instrument the court may place itself in the parties' position to ascertain their intent from the language used. (*Gillett* v. *Teel,* 272 Ill. 106; *Close* v. *Browne,* 230 Ill. 228.) Deeds should be construed most favorably to the grantee and the

intention of the parties is the test by which to determine the effect of a deed, including the description therein. (*Brenneman* v. *Dillon,* 296 Ill. 140; *In re Estate of Frayser,* 401 Ill. 364.) Furthermore, there is a presumption that a grantor in executing a deed intended to convey only property which he owned. (*Brenneman* v. *Dillon,* 296 Ill. 140.) These principles have not been disputed by the defendants in this case but only their application.

By the decree of this court in *Daily* v. *Boudreau,* 231 Ill. 228, it was established that the east boundary line of the 80 acres owned by Thomas Daily, Sr., was the division fence and not the true east line of the quarter section according to government survey. At the time of his death Thomas Daily, Sr., did not own any of the land lying east of the division fence. It must be presumed that the partition commissioners, being officers of the court, performed their duty. Their duty was to partition the land owned by Thomas Daily, Sr., at his death, and no other. In fact, the court had no jurisdiction to partition other land in such proceeding. It was also their duty to go upon the premises, view it, and make a fair and impartial partition of the premises as they found them. Parol evidence offered clearly showed that at the time of partition the visible east boundary of the tract was a division fence, partly hedge and partly otherwise. Also, there was a visible roadway in existence west of the fence. From the time of purchase of the 80 acres by Thomas Daily, Sr., to the time of filing the partition suit a lane had been maintained west of the division fence. This fact is a circumstance to be given weight in ascertaining intention of the commissioners as to location of the easement.

Another factor is the practical interpretation placed upon the deed by the parties themselves. (*Henry* v. *Metz,* 382 Ill. 297; *Trapp* v. *Gordon,* 366 Ill. 102; *Shadden* v. *Zimmerlee,* 401 Ill. 118.) Subsequent to the partition suit, while a brother of defendants owned the 80-acre tract,

Thomas A. Daily put in a row of hedge posts along the north 40 acres thereof 33 feet west of the division fence. Bernard Daily repaired and changed a tile outlet from a point on the division fence to a point 34 feet west of the fence. The defendants themselves stretched a cable to protect their tenants 35 feet west of the fence. The tenant while Bernard Daily owned the 80 acres testified that for seven or eight years he did not farm the right of way claimed by plaintiff. We conclude from the extrinsic evidence that there was a latent ambiguity in the description of the right of way and that the partition commissioners, the court, and the master in chancery, in describing the same, intended to describe the east two rods of the southwest quarter of section 29 owned by Thomas Daily, Sr., at his death, meaning for said right of way to be measured from the division fence forming the east boundary of the 80 acres in question.

The defendants in attempting to avoid this conclusion argue, first, that Peter Boudreau, with whom Thomas A. Daily, Sr., had his litigation, was a party defendant to the partition suit, that the partition decree quieted title to the 80-acre tract in question in the Daily heirs, thus removing any imperfection in the title, and that such decree is *res judicata* and binding on that issue. This contention is apparently first raised on appeal and the cross bill to quiet title is not abstracted. Neither was it included in the additional abstract. The additional abstract does, in general, indicate that title to the 80-acre tract was quieted. An examination of the record discloses the crossbill alleges no clouds upon title to the 80-acre tract and no specific finding of such in the decree. There is no evidence that at any time after the partition decree, up until the assertion of this argument in this court, did Matthew Daily or his children, including the defendants herein, claim ownership of or attempt to repossess the land lying east of the division fence from Boudreau. It is unreasonable to think that no

demand would have been made by them for surrender of possession thereof if the court in the partition suit had found that Boudreau's title was a cloud on the Daily title. It is unlikely that if such was an issue in the partition suit the trial court would have attempted to overrule this court's prior decision or that there would have been no appeal therefrom if it had. The partition decree must be construed with reference to the issues properly before it, and we conclude that there was no issue properly before it concerning title to land lying east of the division fence.

Defendants also claim that a tax assessment change listed in 1950 showed that plaintiff claimed no interest in the west 78 acres of the 80-acre tract. There is no showing by competent proof as to who caused such change to be made and therefore it cannot form the basis of estoppel as to claimed ownership of land.

Finally, defendants argue that if a latent ambiguity exists it should not be permitted to defeat their rights as innocent purchasers for value without notice. Although the defendants may be purchasers for value, from what has heretofore been said they certainly cannot be considered innocent purchasers or without notice, because of their being parties defendant to the original partition suit. The fact that prior to acquisition of the land from Bernard Daily they may have disposed of their interest to him, does not take away their knowledge.

Since we have concluded that the trial court was in error in locating the easement by measuring from the true east line of the quarter section rather than from the division fence line, it naturally follows that the court was in error in assessing actual and punitive damages against plaintiff because the plaintiff had the right to make the use she did of the claimed easement strip.

No error is assigned by plaintiff for failure of the court to assess damages against the defendants as originally prayed, and the point may be considered waived.

The defendants in their cross appeal also assign error on the trial court's order finding that costs and expenses should be borne equally by the parties except as to witness fees, and in enjoining defendants from interfering with plaintiff's use of the easement. On the facts of this case, in the light of conclusions hereinbefore announced, the court was correct in both respects. The prayer of defendants to summarily tax the plaintiff with all expenses incurred by defendants in and about this suit under section 41 of the Civil Practice Act is denied.

Accordingly, the decree of the trial court is affirmed in part and reversed in part, and the cause is remanded, with directions to enter a decree not inconsistent with the opinions herein expressed.

*Affirmed in part and reversed in part and remanded, with directions.*