PHILIP SCHULZ, JR., *et al.*, Plaintiffs-Appellees, *v.* E. RAY McCRACKEN, Defendant-Appellant.

Third District   No. 76-235

■■■■■■

Opinion filed January 25, 1977.

Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet (Thomas R. Wilson, of counsel), for appellant.

Wenger & Korst, of Lockport (Eugene J. Korst, of counsel), for appellees.

Mr. JUSTICE BARRY delivered the opinion of the court:

The suit underlying this appeal is a quiet title action in which the plaintiffs, Philip Schulz, Jr., and his wife, Ruth, also sought injunctive relief against the defendant's, E. Ray McCracken's, use and possession of the five-acre tract involved. Following a bench trial, judgment was entered for the plaintiffs. From this judgment the defendant appeals.

The land involved in this appeal is described in the plaintiffs' deed as:

"The West 5 acres of the 13 acres of land described as follows: Beginning on the North and South half Section line, 80 rods South of the Northwest corner of the Northeast quarter of Section 2, in Township 37 North, and in Range 10 East of the third Principal Meridian and run thence East 80 rods, thence South 26 rods, thence West 80 rods and thence North 26 rods to the point of beginning, situated in Will County, Illinois."

On the other hand, the defendant's land has the following legal description:

"The Southwest quarter of the Northwest quarter of the Northeast quarter of Section 2, Township 37 North, Range 10 East of the third Principal Meridian, Will County, Illinois."

The issue arises because, if the descriptions are construed under the United States Government Survey, the defendant's land would encompass and absorb part of the land described in the plaintiffs' deed.

However, the United States Government Survey indicates that the northeast quarter of section 2 contains 172.28 acres and was divided in such a way that the northern portion of the quarter contained 92.28 acres while the southern portion contained 80 acres, the usual acreage for a half quarter section.

■■ The defendant argues that there is no ambiguity in the deed which transfers title of the quarter, quarter, quarter section to him. We disagree.

"A latent ambiguity occurs where a writing appears on its face clear and unambiguous, but which, in fact, is shown by extrinsic evidence to be uncertain in meaning; or where a description apparently plain and unambiguous is shown to fit different pieces of property, and in such cases, the ambiguity being raised by extrinsic evidence, the same kind of evidence may be admitted to explain it or identify the property referred to in the writing." (*Allendorf v. Daily* (1955), 6 Ill. 2d 577, 590, 129 N.E.2d 673, 680.)

The history of the conveyancing of these parcels of land show that the legal description in the defendant's deed applies to land other than that to which it would apply if that description were construed under the United States Government Survey alone.

The chain of title of both parcels originates in 1835 when Hannibal Ward purchased the west half of the northeast quarter of section 2, containing 86.14 acres of land. Ward conveyed away two separate portions of this property. The first was to Nathan Steward, and the legal description of the land involved in that conveyance was:

"[B]eginning at the North West corner of the North east quarter of Section No. Two in Township No. Thirty seven North of Range No. Ten East of the third principal meridian and running thence South along the quarter section line Eighty rods, thence east across west half of said quarter, thence north along the east line of said lot to the north line of said quarter, thence west along said line to the place of beginning, to contain forty acres the same more or less."

Subsequently, Steward conveyed away 10 acres of this land to Casper Beck. The legal description contained in that deed is:

"The South West quarter of the North West quarter of the North East quarter of Section Two (2) in Township Thirty-seven (37) North and of range Ten (10) East of the Third Principal Meridian, containing Ten (10) acres more or less."

The ownership of this land can be traced to the defendant.

However because the west half of the northeast quarter of section Two contains more acreage than a normal half quarter section, Ward retained 46+ acres. Thereafter, Hannibal Ward conveyed land to James Ward as follows:

"Being thirteen acres of the North End of the South forty six acres of the West half of the North East quarter of Section No. 2 of Township No. 37 North of range No. 10 East of the 3d principal meridian * * *."

This land was sold, in turn, to James Merrifield and to Michael Finlon. The deed out to Finlon adds an additional description for the 13 acres.

"Commencing at a Stake on the Half Section line Eighty Rods South of the North West Corner of said North East Quarter of said Section Two (2) Township Thirty seven (37) North of Range Ten 10 East of the 3d P.M. running thence East Eighty rods thence South twenty six Rods thence West Eighty rods thence North twenty six rods to the Place of beginning * * *."

Subsequently, Finlon sold "five acres off from the West end of 13 acres [describing the 13 acres as immediately above]" to John Schulz, plaintiffs' grandfather. This five-acre tract was then conveyed to the plaintiff's father, Philip, and then to the plaintiff in 1943.

In addition, in 1939 Philip Schulz acquired a tax deed to the southwest quarter of the northwest quarter of the northeast quarter of section 2. Following a suit in Federal court, brought by the defendant's immediate predecessor in title, Elizabeth Doherty, it was determined that Philip Schulz had no right title or interest in that described land. Philip Schulz also entered into a release, giving up all claims against the quarter quarter quarter section and presented to the defendant's predecessor in title a quit claim deed for the quarter quarter quarter section.

■■ The defendant contends that because of the references to "quarters" and "section" in the quitclaim deed from Philip Schulz to Elizabeth Doherty, the United States Government Survey should be incorporated by reference into that deed. Although, when property is described in the terminology of the United States Government Survey system, it is necessary to refer to the survey to determine the boundaries of the land (*McClintock v. Rogers* (1849), 11 Ill. 279), because of the latent ambiguity, as evidenced by the misdescription of the land in the defendant's chain of title, we refuse to incorporate the United States Government Survey into the quitclaim deed from Philip Schulz to the defendant's predecessor in title. The defendant's title is derived from Casper Beck who did not own the southwest quarter of the northwest quarter of the northeast quarter of section 2, township 37 North, range 10 east of the third principal meridian under the United States Government Survey, but owned the 10 acres in the southwest quarter of the 80-rod square parcel created by Hannibal Ward in his conveyance to Nathan Steward.

The defendant also argues that the plaintiffs are estopped from denying that the defendant owns the southwest quarter of the northwest quarter of

northeast quarter of section 2. The bases of the estoppel, according to the defendant, is the Federal judgment, the release and the quitclaim deed. We would agree that because of estoppel, the plaintiffs can not claim an interest in the land described in Elizabeth Doherty's deed. However, the plaintiffs are not estopped from denying that the defendant has any interest in the land as described in the plaintiffs' deed.

Ever since Hannibal Ward conveyed away these two parcels, they have been treated as separate parcels, with no overlaps, and taxed as separate parcels. The defendant was taxed on his 10 acres, the plaintiffs on their five. In fact, the discrepancy was not discovered until 1966, when the defendant had his land surveyed.

■■ Therefore, when Elizabeth Doherty, the defendant's sister-in-law, brought suit in Federal court, by attorneys employed by the defendant and at the defendant's request, both parties had to know that the land in contention was the 10 acres originally transferred from Nathan Steward to Casper Beck. This is the land in which the Federal court, by agreed settlement, determined Philip Schulz had no interest. This is the land in which Philip Schulz released all claims. And it is this land, not the five-acre parcel or any part of the five-acre parcel, for which both parties understood Philip Schulz to have given a quitclaim deed. It was the intention of the parties, under those circumstances, that Philip Schulz give up any interest he might have in the 10 acres transferred by chain of title from Nathan Steward to Casper Beck and on to Elizabeth Doherty. Since, the legal description involved in the Federal judgment, the release and the quitclaim deed was equally as ambiguous as it is here, the trial court properly used extrinsic evidence to identify the property referred to in those three documents (see *Allendorf v. Daily* (1955), 6 Ill. 2d 577, 129 N.E.2d 673), including proper records (*Choteau v. Jones* (1849), 11 Ill. 300), previous possession (*Colcord v. Alexander* (1873), 67 Ill. 581), and the description in the deeds of former grantors (*Colcord v. Alexander* (1873), 67 Ill. 581; *Wettig v. Bowman* (1866), 39 Ill. 416).

Because the property involved in the Federal judgment, the release and the quitclaim deed from Philip Schulz to Elizabeth Doherty was not the same property as is involved in this case, the plaintiffs are not estopped from bringing this action. Furthermore, after reviewing the prior records and conveyances in order to resolve the ambiguity, the trial court correctly determined that the defendant has no right, title or interest in the plaintiffs' five-acre tract. Accordingly, we affirm the judgment of the Circuit Court of Will County.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.