MARIO R. EGIDI, Plaintiff-Appellant, v. THE TOWN OF LIBERTYVILLE
*et al.*, Defendants-Appellees.

Second District    No. 2—92—1293

Opinion filed September 29, 1993.—Rehearing denied November 2, 1993.

Magee, Negele & Associates, of Round Lake (James T. Magee, of counsel), for appellant.

Siemon, Larsen & Purdy (Gerald P. Callaghan, of counsel) and Neal, Gerber, Eisenberg & Lurie (Robert Radasevich, of counsel), both of Chicago, for appellees.

JUSTICE COLWELL delivered the opinion of the court:

This is the third time this matter has come before us. Plaintiff, Mario R. Egidi, brought the action as a taxpayer's suit against defendants, the Town of Libertyville (Libertyville or Township) and Bank of Highland Park (Bank), challenging the Township's acquisition of land from the Bank. Egidi appeals from an order granting the Township's motion for summary judgment. Specifically, Egidi challenges Libertyville's claim to two connecting easements that, when combined with the acreage in fee simple acquired from the Bank, would give the Township the minimum 50 acres required for a land purchase under the Township Open Space Act (Act) (Ill. Rev. Stat. 1987, ch. 139, par. 321 *et seq.* (now codified, as amended, at 60 ILCS 115/1 *et seq.* (West 1992))). We reverse.

The Bank filed memoranda supporting Libertyville's motion for summary judgment but was not named in the lower court's order granting that motion and submitted no brief as a defendant-appellee; accordingly, throughout this disposition, reference will be made to only one defendant, the Town of Libertyville.

The factual background of this dispute is set forth in detail in the earlier cases, *Egidi v. Town of Libertyville* (1989), 181 Ill. App. 3d 542 (*Egidi I*), and *Egidi v. Town of Libertyville* (1991), 218 Ill. App. 3d 596 (*Egidi II*). The facts will be discussed here to the extent necessary to resolve the issues and where the record has been augmented subsequent to the earlier cases.

Libertyville purchased the vacant land at issue pursuant to the Act. The Act authorizes the purchase of open land by a township, but in section 2(b) defines open land as "any space or area of land or water of an area of 50 acres or more, the preservation or the restriction of development or use of which would" preserve or foster various specified goals (Ill. Rev. Stat. 1987, ch. 139, par. 322(b) (now codified, as amended, at 60 ILCS 115/2(b) (West 1992))).

The property Libertyville purchased is bisected across its far southeast corner by a 270-foot-wide Commonwealth Edison right-of-way. Accordingly, the land purchased by Libertyville actually lies on either side of the right-of-way, and neither side contains 50 acres. At the time the earlier cases were decided, the total area of the property was considered to be 50.6771 acres, with approximately 49.5 acres to the north of the Commonwealth Edison property and approximately 1.25 acres to the south. A subsequent resurvey of the property placed the total acreage at 49.69.

In *Egidi I*, based on what appeared to be a total lack of connection between the two parcels, we agreed with plaintiff's contention that Libertyville had purchased two separate areas of land from the Bank that did not adjoin or abut each other. We also considered it irrelevant that the two parcels might be considered contiguous for annexation purposes under certain provisions of the Illinois Municipal Code (see, *e.g.*, Ill. Rev. Stat. 1987, ch. 24, par. 7—1—1 (now codified, as amended, at 65 ILCS 5/7—1—1 (West 1992))), since we were considering the status of the parcels under the Township Open Space Act. We held in *Egidi I* that two regions of land completely separated by a 270-foot right-of-way that is owned by a different entity cannot be considered *"an* area of land." (Emphasis added.) *Egidi*, 181 Ill. App. 3d at 545.

In *Egidi II*, the parties again disputed whether the land met the statutory acreage requirement. However, this time the Township contended in the trial court that when it purchased the property from the Bank it acquired not only the acreage in fee simple but also two easements over the Commonwealth Edison right-of-way.

The land comprising the right-of-way was originally conveyed by Egidi to Commonwealth Edison by deeds executed in 1955 and 1960. Both deeds reserved an easement across the right-of-way "for 2 private roadways 33 feet in width to be established in a Southeasterly and Northwesterly direction across the above described property at locations" which were to be agreed upon and which would not interfere with the grantee's facilities, equipment, or use of the property. (See *Egidi II*, 218 Ill. App. 3d at 606-07.) The total area of the easements is approximately .40 acres.

Defendant argued that the combined fee and easement interests constituted a purchase of "open land" consistent with the Act. The lower court rejected Libertyville's argument and found that the two parcels were separate areas of land that did not abut or adjoin each other and that the easements did not provide ownership or control

over an area of at least 50 acres. Accordingly, the lower court granted Egidi's motion for summary judgment.

The Township appealed. After determining that the complaint sufficiently asserted plaintiff's taxpayer status and that plaintiff had standing, we addressed Libertyville's contention that the trial court erred in finding that the acreage it acquired was not "open land" pursuant to the Act. Certain principles of review guided our inquiry then, as they do now.

Summary judgment is proper when there remain no genuine issues of fact and the movant is entitled to judgment as a matter of law. (*Logan v. Old Enterprise Farms, Ltd.* (1990), 139 Ill. 2d 229.) However, summary judgment is a drastic means of ending litigation and should be granted only when the right of the moving party is clear and free from doubt. *Logan*, 139 Ill. 2d at 233.

We found in *Egidi II* that factual questions as to the location and nature of the purported easements over the right-of-way precluded summary judgment. In particular, we were unable to determine from the record whether the easements apply only to the Township's property or if they are meant to provide access points along a far longer section of the Commonwealth Edison right-of-way. Since Egidi asserted that his original parcel is held by multiple owners and the record does not reveal the respective easement rights of those owners, we could not determine whether defendant is entitled to both, one, or no easements. We concluded that we had no way of knowing whether the Township's parcels are connected by an easement interest in the right-of-way.

Although we remanded for resolution of the relevant factual issues, we nevertheless proceeded to address the questions of law pertaining to interpretation of the Act that had been raised in the appeal. We reached several determinations, which, under the doctrine of the law of the case, are not open for reconsideration. *P S L Realty Co. v. Granite Investment Co.* (1981), 86 Ill. 2d 291, 312; *Hamilton v. Williams* (1992), 237 Ill. App. 3d 765, 773-74.

We first determined in *Egidi II* that it is not fatal to the Township's acquisitions that Libertyville's interest in part of the requisite area of land is in the form of easements. Section 4.02 of the Act authorizes townships to secure open land by acquiring "the fee *or any lesser right or interest* in real property that is open land *** and to hold the same *** for open space, scenic roadway, pathway, outdoor recreation, or other conservation benefits." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 139, par. 324.02 (now codified, as amended, at 60 ILCS 115/4.02 (West 1992)).) We also determined

that Libertyville's land is contiguous for purposes of acquisition under the Act, since the easements appear to consist of open land, connecting two other parcels of open land, which is consistent with the statute's goal of preserving large tracts of land. See *Town of Libertyville v. First National Bank* (1990), 133 Ill. 2d 356, 362.

We further concluded that the asserted easements would give the Township the level of control envisioned by the Act as necessary to qualify a less than fee interest as open land. We reasoned that easements appurtenant were formed when the easements were originally reserved in Commonwealth Edison's deeds. (See *Egidi II*, 218 Ill. App. 3d at 611.) Since easements appurtenant run with the land and pass by conveyance (*Harris Trust & Savings Bank v. Chicago Title & Trust Co.* (1980), 84 Ill. App. 3d 280, 287; *Aebischer v. Zobrist* (1977), 56 Ill. App. 3d 151, 155), the easement interest now claimed by Libertyville is permanent in nature. It would give the Township the right to put in at least one 33-foot-wide roadway in order to facilitate movement from one segment of its property to the other across Commonwealth Edison's right-of-way. The only restriction on any such roadway would be that it must be located so that it would not interfere with Commonwealth Edison's equipment or use of the property. Moreover, since the easement would provide access between the two parcels owned by the Township, we perceived control over these easements as achieving the same purpose as ownership of the fee interest in the parcels connected by the easements, *i.e.*, preservation or restricted development or use.

Finally, we concluded that, based on the acreage figure then before us of 50.6771 for the two parcels, Libertyville's claimed easement interest, combined with its fee interest, would be adequate to establish that the Township contemporaneously acquired ownership or control over an area of 50 acres or more and, thus, met the statutory requirements.

On remand, a broader factual picture came to light. The original tract of land, evidently purchased by Egidi and his wife in 1954, was divided roughly in half from north to south by Illinois State Route 21 (Route 21) and bordered on the east by the Des Plaines River (River). In the 1955 and 1960 deeds, Egidi conveyed to Commonwealth Edison a strip of land 270 feet wide and approximately 4,000 feet long, running from southwest to northeast through nearly the entire breadth of the original property. The easement rights that Egidi reserved in those deeds were not physically located at any point along the Commonwealth Edison right-of-way.

In 1974, Egidi sold the eastern portion of the original property, lying between Route 21 and the River, to the Lake County Forest Preserve District (Forest Preserve). The Forest Preserve deed is silent as to the location of the easements at specific points across that portion of the right-of-way that bisects the Forest Preserve's property; indeed, the Forest Preserve deed does not specifically mention the easements. In an affidavit introduced by Libertyville, Joseph T. Morrison, land acquisition counsel for the Forest Preserve, states that the Forest Preserve did not become aware of the easements until after *Egidi II* was published in 1991 and "has never made a claim" to them.

In 1977, Egidi conveyed legal title to the subject property west of Route 21 into a Bank of Waukegan land trust, in which he and his wife owned the beneficial interest. The deed in trust did not locate the easements at any given point across the right-of-way west of Route 21. Thus, when the Bank of Highland Park acquired the property in 1987 in a Uniform Commercial Code sale and subsequently sold the property to Libertyville, the deed to Libertyville also did not make reference to any specific location of the easements along the right-of-way.

Egidi retained portions of his original property. These are designated on a plat of survey dated September 11, 1987, as exceptions C, D, E, F, and G. Egidi apparently sold all but exception G, upon which he and his wife evidently continue to reside. Only one of these exceptions appears to adjoin the Commonwealth Edison right-of-way: according to the plat of survey, exception F abuts the right-of-way for a short distance along its southeasterly side.

In October 1991, following the publication of our opinion in *Egidi II*, Egidi and his wife recorded a "Declaration of Easement Location," in which they purported to fix both easements side by side at a point east of Route 21. As declared by the Egidis, the easements cross the right-of-way in a due north-south direction, connecting the two parts of the Forest Preserve's property on either side of the right-of-way.

In February 1992, the Township and Commonwealth Edison recorded an "Agreement for Location of Roadway Easement," in which the two easements were located side by side on the west side of Route 21. The easements as located by the Township and Commonwealth Edison connect the two segments of the Township's property and cross the right-of-way in a northwesterly-southeasterly direction.

In moving for summary judgment, Libertyville maintained that its agreement with Commonwealth Edison resolved the primary question asked by this court in *Egidi II*: where the easements are located. The Township argued that the easements appurtenant were "floating" easements, passing with the various conveyances of Egidi's property, until such time as a location was agreed upon by Commonwealth Edison and the owner(s) of property abutting the right-of-way. Egidi had, by conveyance, relinquished his interest in any abutting property and, thereby, his right to set easements with Commonwealth Edison; moreover, Libertyville argued, his purported declaration of easements was done without agreement by Commonwealth Edison and did not conform to the original agreement of a northwesterly-southeasterly direction. The only remaining adjoining property owner was the Forest Preserve, which had never made a claim to the easements. Thus, according to the Township, the February 24, 1992, agreement with Commonwealth Edison properly and definitively set the location of both easements. Combining their area of .40 acres with the fee simple acreage, even using the lower figure of 49.69 acres, provided the Township with an acquisition of more than 50 acres.

Egidi advances a variety of arguments in response. He asserts that the size of the original parcels may be material. If this court determines that Libertyville is entitled to only one of the easements, the 50-acre requirement will not be met. He also contends that connecting easements were not acquired simultaneously with the Township's acquisition of the fee in 1987, since an actual connection between the parcels was not claimed until February 1992, more than four years after the purchase from the Bank. He further asserts that because only one of the original easement reservations in the Commonwealth Edison deeds states the requirement that Commonwealth Edison agree to the easements' eventual location, he and his wife were entitled to fix the other easement wherever they chose along the right-of-way.

Egidi also claims that he originally intended to establish two routes across the Commonwealth Edison right-of-way on the east side of Route 21 and that an evidentiary hearing is necessary to determine the intentions of the parties. Alternatively, he suggests that the easements should be considered to have been abandoned. Finally, Egidi argues that it is not clear, as Libertyville maintains, that only owners of property adjoining the right-of-way are entitled to the easements; however, if we determine that to be the case, and if the easements are considered to be "floating," then two other ad-

joining property owners, the Forest Preserve and the owner of "Exception I [*sic*]," have equal entitlement with Libertyville to set the location of the easements.

Our conclusions in *Egidi II* dispose of several of Egidi's contentions. We have already determined that the disputed easements are easements appurtenant and that the Township's "purported easement interests were *acquired simultaneously* with the fee interests." (Emphasis added.) (*Egidi II*, 218 Ill. App. 3d at 610.) We further stated in *Egidi II* that Libertyville's claimed interest in the easements, combined with its fee interests, would establish that the Township "*contemporaneously acquired ownership or control* over an area of 50 acres or more." (Emphasis added.) (218 Ill. App. 3d at 612.) We now recognize that the amended survey figure of 49.69 acres for the fee simple, if valid, would require that Libertyville be entitled to both easements in order to achieve the statutory minimum of 50 acres; nevertheless, the above statements clearly establish that whatever easement interest Libertyville is entitled to was acquired by the Township in 1987.

■ We have also ruled that the easement reservations in both of the original Commonwealth Edison deeds provided that the locations of the roadways "were to be agreed upon." (218 Ill. App. 3d at 607.) We believe the requirement in the 1955 deed that the easements must not interfere with equipment "to be placed thereon" by Commonwealth Edison sufficiently implies the necessity of an agreement as to their location, despite the absence of the explicit language found in the 1960 deed. We hold, therefore, that the Egidis' "Declaration of Location," dated October 21, 1991, is invalid, because it was executed without the agreement of Commonwealth Edison, as is required by the original deeds.

In *Egidi II*, we found no inherent ambiguity in the terms of easement reservation in either the 1955 or the 1960 document, and we find none now. The parol evidence rule prevents any oral testimony to vary the terms of a written document unless ambiguity in the terms exists. (*La Salle National Insurance Co. v. Executive Auto Leasing Co.* (1970), 121 Ill. App. 2d 430, 437; *Heritage Standard Bank & Trust Co. v. Trustees of Schools of Township No. 37 North, Range 12, East of the Third Principal Meridian* (1980), 84 Ill. App. 3d 653, 659.) Where no ambiguity exists, parol evidence is not admissible to determine the actual intention of the parties.

No particular words are necessary to constitute a grant, and any words that show a clear intention to give an easement, which is by law grantable, are sufficient to effect that purpose. (*Chicago Ti-*

*tle & Trust Co. v. Wabash-Randolph Corp.* (1943), 384 Ill. 78, 85-86; *Aebischer*, 56 Ill. App. 3d at 155.) Moreover, the language of the conveyance is definite and certain when it can be determined therefrom what the evident intention of the grantor was. (*Aebischer*, 56 Ill. App. 3d at 155-56.) The evident intention of Commonwealth Edison to provide Egidi with access to his property on either side of its right-of-way, the location to be agreed upon, can be determined from the language of the deeds. Therefore, we hold that an evidentiary hearing to determine the original intentions of Egidi and Commonwealth Edison with respect to either creating or locating the easements is both unnecessary and barred by the parol evidence rule.

■ Although the issue was not raised in *Egidi II*, we find we can also readily dispose of Egidi's claim that the easements were abandoned. The rule is that mere nonuse will not constitute an abandonment of an easement created by grant, but that there must also be circumstances showing an intention of the dominant owner to relinquish his right. *Beloit Foundry Co. v. Ryan* (1963), 28 Ill. 2d 379, 390.

We disagree with Egidi that nonuse "in conjunction with the nature of the easement reservations, the subsequent divisions of the original parcel without mentioning the easement reservations, and the apparent lack of necessity for use" raise a factual question of intent not addressed by the trial court. We have determined that the easement reservations are unambiguous. The failure of an easement description to specify details, such as the exact location or the width, does not render the easement excessively vague or unenforceable (*Joseph Giddan & Sons v. Northbrook Trust & Savings Bank* (1986), 151 Ill. App. 3d 537, 541; *Vallas v. Johnson* (1979), 72 Ill. App. 3d 281, 282). Easements appurtenant pass by conveyance of the land to which they are annexed, even without being expressly mentioned, and they are not extinguished by a division of the dominant estate. (*Beloit*, 28 Ill. 2d at 388.) While the failure to use an easement for the purpose created may become a circumstance to be considered on the question of intent to abandon, no abandonment is shown where there is no evidence to prove an intent by the owner of the dominant estate to abandon the easement permanently. (*Chicago Title & Trust Co.*, 384 Ill. at 92.) Egidi offers no such proof; on the contrary, in support of an alternative argument, Egidi introduced several pieces of evidence purporting to show where he intended to locate the easements and what he planned to use them for.

For the above reasons, we find that the easements were not abandoned by Egidi or any other owner of the dominant estate holding an interest in them, with the exception of the Forest Preserve, as is explained below.

The remaining issues raised by Egidi are (1) do all owners of portions of the original tract hold an interest in the easements, even if their property does not adjoin the Commonwealth Edison right-of-way; and (2) must all owners who do hold an interest consent to the locations of the "floating" easements?

Egidi contends that all owners of the original subdivided tract are on an equal footing with the Township, regardless of whether their parcels abut the right-of-way. He relies on *Beloit*, which states that "there [is no] requirement that the dominant estate must touch or join the servient estate if both are clearly defined." *Beloit*, 28 Ill. 2d at 388; see also *Allendorf v. Daily* (1955), 6 Ill. 2d 577, 588 (contiguity is not necessary to validity if the dominant and servient estates are clearly set out in the deed).

In *Beloit*, the servient estate was clearly defined as a 30-foot-wide private alley, comprised of the south 15 feet of one parcel and the north 15 feet of another parcel. The easement ran the entire length (and width) of the servient estate, providing access to a public thoroughfare. The supreme court held that the easement was originally created for the benefit of all parcels situated in the lot through which it ran. The alley, which comprised both the servient estate and the easement, was found to be appurtenant to some parcels which did not touch or join it.

A clearly defined servient estate distinguishes *Beloit* from the instant case. In *Beloit*, the servient estate and the easement were all of a piece, created contemporaneously and composed entirely of the same parcels of land. Here, the specific locations of the easements across the servient estate were not described in the documents creating the easements but rather were to be determined at a future time. Thus, the servient estate was not fully set out in the original deeds. Because the circumstances are different, we analyze the question of which portions of the dominant tract the easements are appurtenant to independently of the supreme court's findings in *Beloit*.

■ Generally, an easement is considered appurtenant only when one terminus is on the land of the party claiming it; however, the only essential element of an easement appurtenant is that it inhere in or concern the land of that party. (*Allendorf*, 6 Ill. 2d at 588; *Taylor v. Lanahan* (1979), 73 Ill. App. 3d 829, 832.) An easement

may be considered appurtenant if it clearly appears to have been the intention that it should be that way, although the dominant and servient estates do not join. (*Allendorf*, 6 Ill. 2d at 588.) In the present case, the original deeds called for "private roadways *** to be established *** *across* [the right-of-way]." (Emphasis added.) The wording indicates to us that the purpose of the roadways was to provide a land owner access to the property on either side of the right-of-way. It is logical to conclude that such easements are appurtenant only to parcels of land that have certain access to them, *i.e.*, those parcels on which at least one terminus is located.

Our language in *Egidi II* supports this interpretation of the deeds. In determining that easements appurtenant were formed, we noted that "[o]ne terminus of each easement was on land owned by [Egidi]." (*Egidi II*, 218 Ill. App. 3d at 611.) We further observed that "[i]f, at the time the easements were reserved, all of the land *adjoining* the right-of-way was held by Egidi and his wife as sole owners, then they alone would have held all the easement rights." (Emphasis added.) (218 Ill. App. 3d at 607-08.) It is apparent to us from this statement that holding adjoining land is a prerequisite to holding easement rights and that, accordingly, easements would pass only to grantees of adjoining land. We hold, therefore, that the easements are appurtenant to, and run with, only those portions of the dominant tract that adjoin the right-of-way.

We further hold that the Egidis' "Declaration of Location," dated October 21, 1991, is invalid not only, as stated above, because it was executed without the agreement of Commonwealth Edison; it also fails because the Egidis, as owners of only nonadjoining property, held no interest in the easements appurtenant when the declaration was executed.

Egidi asserts for the first time in his reply brief that an "Exception I" adjoins the right-of-way. We find no "Exception I" on the 1987 plat of survey included in the record and assume that the intended reference was to exception F. On the uncertified plat, exception F appears to adjoin the right-of-way for a short distance between the exception's southeastern corner and Route 21, which runs the remaining length of exception F's southeastern border. A roadway established in a northwesterly-southeasterly direction would almost immediately encounter Route 21. Assuming that passage over that section of Route 21 would present no obstacle, the second terminus of exception F's easement would be on land belonging to the Forest Preserve.

We need not consider whether exception F's apparent limited contiguity with the Commonwealth Edison right-of-way plausibly triggers entitlement to the disputed easements appurtenant, since we find that the issue is waived on appeal. A point not raised in the trial court cannot be urged on appeal. (*Nugent v. Miller* (1983), 119 Ill. App. 3d 382, 387.) This rule of waiver applies even in a summary judgment case. (*Witek v. Leisure Technology Midwest, Inc.* (1976), 39 Ill. App. 3d 637, 640.) Our examination of the record reveals that exception F was referred to only once below, in remarks of counsel for the Bank during the hearing on the summary judgment motion. In its order, the trial court considered the Township and the Forest Preserve to be the only current owners of abutting properties, and Egidi did not raise the issue of the existence or viability of other adjoining property in his post-trial motion to vacate the trial court's order. See *Suslick v. Rothschild Securities Corp.* (1987), 164 Ill. App. 3d 589, 593 (failure to raise an issue in post-trial motions constitutes waiver of that issue).

■ For purposes of this dispute, then, the only properties to adjoin the right-of-way are the Township property, which lies on both sides of the right-of-way to the west of Route 21, and the Forest Preserve property, which lies on both sides of the right-of-way to the east of Route 21. The agreement entered into by the Township and Commonwealth Edison on February 24, 1992, locates both easements, side by side, across that part of the right-of-way lying to the west of Route 21. Since each easement is approximately .20 acres, Libertyville's claim to both easements provides it with an area of about 50.09 acres, based on the revised figure for the fee simple of 49.69 acres. However, only Township property is accessed by the easements.

We find that we cannot resolve the remaining issue raised by Egidi on appeal, whether the Forest Preserve should have an equal say with Libertyville in setting the locations of the easements, because we are unable to discern from the record the Forest Preserve's precise intentions with respect to the interest it holds in the easements. Specifically, we do not know whether the Forest Preserve intended to abandon its interest in the easements.

Rights to an easement created by express grant or reservation can be extinguished only by abandonment or adverse possession. (*Kurz v. Blume* (1950), 407 Ill. 383, 387; *Pacemaker Food Stores, Inc. v. Seventh Mont Corp.* (1983), 117 Ill. App. 3d 636, 645.) Establishing title by adverse possession requires continuous, hostile possession for at least 20 years. (*Kurz*, 407 Ill. at 387.) Thus, both Li-

bertyville and the Forest Preserve presently hold easement rights, absent abandonment on the part of the Forest Preserve. At least one consequence of this finding could prove fatal to the Township's acquisition. If, within 20 years, the Forest Preserve were to claim a roadway across that part of the right-of-way bisecting its property, Libertyville could be left with only one easement and, accordingly, with insufficient acreage under the revised survey to meet the 50-acre requirement.

As we stated above, the abandonment of an easement requires, in addition to nonuse, circumstances showing an intention of the dominant owner to relinquish his right. (*Beloit*, 28 Ill. 2d at 390.) We believe that the affidavit of the Forest Preserve's counsel for land acquisition, which states that the Forest Preserve "has never made a claim to the Easements," in conjunction with the Forest Preserve's nonintervention in this litigation, may comprise circumstances sufficient to show an intention to relinquish its rights to the easements. However, the intention to permanently abandon an easement requires proof (*Chicago Title & Trust Co.*, 384 Ill. at 92), and the determination of whether there has been an abandonment is within the discretion of the trial court (*Beloit*, 28 Ill. 2d at 390). We decline to pass judgment on a matter of intention that has not been aired below.

When a trial court or court of review becomes cognizant of the absence of a necessary party to the matter before it, the court *sua sponte* has the duty of directing the joinder of the absent party. (*Sullivan v. Merchants Property Insurance Co.* (1979), 68 Ill. App. 3d 260, 263.) Section 2—406(a) of the Civil Practice Act (735 ILCS 5/2—406(a) (West 1992)) provides:

> "If a complete determination of a controversy cannot be had without the presence of other parties, the court may direct them to be brought in."

If abandonment by the Forest Preserve was not intended, we fail to see by what authority Libertyville can claim, at this point in time, exclusive control over the location and use of both easements.

Accordingly, we remand this cause to the trial court with directions that the Lake County Forest Preserve District be made a party to this action in order to determine its intentions with respect to the rights it presently holds in the disputed easements.

Reversed and remanded.

BOWMAN and QUETSCH, JJ., concur.